BOARD OF COUNTY COMMISSIONERS, County of Eagle, State of Colorado, acting as the Eagle County Board of Equalization, Petitioner,

v.

VAIL ASSOCIATES, INC.; and the Board of Assessment Appeals, Respondents.

Allen S. Black, in his capacity as Eagle County Assessor; the Board of County Commissioners of Eagle County, Colorado; Nancy D. Anders, in her capacity as Grand County Assessor; the Board of County Commissioners of Grand County, Colorado; Judy Pettit, in her capacity as Jefferson County Assessor; Robert N. Cruzan, in his capacity as Montezuma County Assessor; the Board of County Commissioners of Montezuma County, Colorado; Tom Issac, in his capacity as Pitkin County Assessor; the Board of County Commissioners of Pitkin County, Colorado; Amy J. Williams, in her capacity as Routt County Assessor; the Board of County Commissioners of Routt County, Colorado; Denise Steiskal, in her capacity as Summit County Assessor, and the Board of County Commissioners of Summit County, Colorado, Petitioners,

v.

Colorado State Board of Equalization, Respondent.

Nos. 98SC869, 99SC126.

Supreme Court of Colorado, En Banc.

Feb. 26, 2001.

As Modified on Denial of Rehearing March 19, 2001.

1264

James R. Fritze, Eagle County Attorney, Bob D. Slough, Cortez, CO, Attorneys for Petitioner in No. 98SC869.

Holme, Roberts & Owen LLP, James D. Butler, Stephanie M. Tuthill, Denver, CO, Attorneys for Respondent Vail Associates, Inc. in No. 98SC869, and Amicus Curiae Possessory Interest Working Group in No. 99SC126.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Alan J. Gilbert, Solicitor General, Paul Farley, Deputy Attorney, David M. Kave, First Assistant Attorney General, Mark W. Gerganoff, Assistant Attorney General, State Services Section, Denver, CO, Attorneys for Respondent Board of Assessment Appeals in No. 98SC869.

Hall & Evans, L.L.C., Thomas J. Lyons, Andrew D. Ringel, Denver, CO, Attorneys for Amicus Curiae Colorado Counties, Inc.

H. Lawrence Hoyt, Boulder County Attorney, Robert R. Gunning, Assistant County Attorney, Boulder, CO, Attorneys for Amicus Curiae Board of County Commissioners of the County of Boulder.

Bob D. Slough, Montezuma County Attorney, Cortez, CO, Attorney for Petitioners in No. 99SC126.

Ken Salazar, Attorney General, Barbara McDonnell, Chief Deputy Attorney General, Michael E. McLachlan, Solicitor General, Christine M. Arguello, Deputy Attorney General, Maurice G. Knaizer, Deputy Attorney General, State Services Section, Denver, CO, Attorneys for Respondent in No. 99SC126.

Justice HOBBS delivered the Opinion of the Court.

In this appeal, we review recent legislation which creates a tax exemption for ski areas and other parties with long-term leases, permits, or contracts to use federal property. We hold that this legislation violates Colorado's constitution, which prohibits statutory exemptions to property taxation unless the exemptions are authorized in the constitution itself. Unless constitutionally authorized, the legislature may not exempt some interests in federal property from taxation while taxing others.

In 1996, the General Assembly enacted legislation directing that some possessory in-

terests in tax-exempt property not be subject to taxation unless the legislature expressly directs such taxation by statute. *See* §§ 39–3–136 & 39–1–106, 11 C.R.S. (2000). The court of appeals held that this legislation was a constitutionally permissible exercise of legislative authority. *See Vail Assocs., Inc. v. Eagle County Bd. of County Comm'rs*, 983 P.2d 49 (Colo.App.1998); *Black v. Colorado State Bd. of Equalization*, No. 97CA1642 (Colo.App. Dec. 24, 1998) (not selected for official publication). We granted certiorari and consolidated these two cases to determine the constitutionality of these provisions.[1] We reverse the court of appeals.

We hold that section 39–3–136 unconstitutionally exempts some private possessory interests in tax-exempt property from taxation, contrary to Article X of the Colorado Constitution and our controlling decision in *Mesa Verde Co. v. Montezuma County Board of Equalization*, 898 P.2d 1 (Colo.1995) (*Mesa Verde III* ). This legislation exempts certain forms of property from taxation without constitutional authorization, and also treats interests within the same class of property differently for taxation purposes. Neither is constitutionally permissible. Accordingly, we sever the offending provisions and leave in place section 39–1–103(17), 11 C.R.S. (2000), which the General Assembly enacted for the valuation of private possessory interests in tax-exempt property should we determine that section 39–3–136 was unconstitutional.

## I.

### A. *Vail Associates*

Vail Associates, Inc. (Vail) operates the Vail ski resort in Eagle County under a special use permit from the U.S. Forest Service (Forest Service). This permit entitles Vail to the occupancy, use, and enjoyment of 12,590 acres of federal land in the White River National Forest for operation of its ski area through October 31, 2031.[2] The permit reserves the right of the Forest Service to allow uses by others that do not materially interfere with Vail's rights and privileges under the permit.

In May 1996, the Eagle County Assessor sent a notice of assessment to Vail for the ski area. The assessor utilized a published formula designed for valuation of ski areas on federal lands. *See* 3 Division of Property Taxation, Colorado Department of Local Affairs, *Assessors Reference Library: Land Valuation Manual* Addendum VII–A, at 1 (1989, rev.vol.1996) [hereinafter *Land Valuation Manual*]. Under this formula, the assessor multiplied the fees paid by Vail to the Forest Service the previous year by an adjustment factor for the current year, and then multiplied the adjusted figure by a capitalization rate tied to the appraisal date, to yield actual value. *See id.* The assessor figured the capitalization rate by adding the state discount rate,[3] the state pass-through rate,[4] and the effective tax rate.[5] *See id.* The assessor multiplied the actual value of the possessory interest by the assessment rate to determine the property tax. *See id.*

The Eagle County Assessor valued Vail's possessory interests at $14,040,330 for the 1996–1997 tax year. Vail appealed the assessment to the Eagle County Board of Equalization, on the basis that taxation of

---

1. We granted certiorari on the following issue: Whether possessory interests are taxable property and properly includable on county tax rolls and the exemption based upon § 39–3–136(2), 11 C.R.S. (1998), is unconstitutional, and the court of appeals erred in affirming the State Board of Assessment Appeals.

2. Vail's promotional material states: "Vail is the largest single ski mountain in the United States, with more than 5,289 acres of terrain and 121 trails." Colorado Ski Country USA Resorts and Lodging: Vail, *at* http://64.225.59.7/resorts/resort_detail.cfm?resortID=23.

3. The discount rate is "[a] rate of return on capital used to convert future payments or receipts into present value." *Land Valuation Manual, supra*, at 4.34 (rev.vol.1999). In 1996, the discount rate was 13.24%. *See id.* at Addendum VII–A, at 1 (rev.vol.1996).

4. The pass-through rate accounts for the Forest Service fees that the government returns to Colorado counties for the support of schools and roads. In 1996, the pass-through rate was 5%. *See id.*

5. The effective tax rate is calculated by multiplying the 1995 mill levy by the real property assessment level. *See id.*

possessory interests in tax-exempt property violates section 39–3–136. The Board of Equalization denied Vail's appeal. Vail then appealed to the State Board of Assessment Appeals (BAA). BAA ruled that taxation of Vail's possessory interests in government-owned land contravened section 39–3–136; it ordered Eagle County to remove them from the tax rolls. BAA determined that it lacked jurisdiction to consider Eagle County's constitutional challenge to section 39–3–136.

Eagle County appealed BAA's ruling to the court of appeals, arguing that section 39–3–136 creates an exemption from taxation contrary to Article X of the Colorado Constitution. The court of appeals affirmed the Board of Assessment Appeals. *Vail Assocs.,* 983 P.2d at 50. The majority determined that the General Assembly has plenary power over taxation and the constitution does not preclude it from defining what interests in property shall be taxed. *Id.* at 56–57. The majority construed the General Assembly's 1996 enactment as a redefinition of the operable taxable property definitions and ruled that the BAA had legally ordered removal of private possessory interests in public lands from the tax rolls. *Id.* at 57. The dissent concluded that our decision in *Mesa Verde III* governed and that section 39–3–136 constituted a tax exemption contrary to Article X. *Vail Assocs.,* 983 P.2d at 60–62 (Roy, J., concurring in part and dissenting in part).

### B. *Black*

Implementing section 39–3–136, the Colorado State Board of Equalization (SBOE) issued an order in October 1996 to each of fourteen Colorado counties, requiring the removal of all possessory interests in government-owned land from the county's property tax rolls.[6] The county assessor and/or Board of County Commissioners of seven of the counties refused to comply with the order and commenced an action in Denver District Court. The 1996 assessed valuation of the possessory interests in the seven counties contesting the order was:

| County | Number of Accounts | Assessed Value |
| --- | --- | --- |
| Eagle | 18 | $4,511,100 |
| Grand | 1 | 8,660 |
| Jefferson | 14 | 1,752,060 |
| Montezuma | 4 | 356,530 |
| Pitkin | 7 | 2,313,850 |
| Routt | 1 | 899,660 |
| Summit | 6 | 4,329,040 |

Four of the seven counties (Eagle, Pitkin, Routt, and Summit) listed on their tax rolls at least one ski resort located on federal lands.

The seven counties argued that: (1) SBOE's order constituted a violation of sections 3, 6, 9 and 10 of Article X of the Colorado Constitution; and (2) possessory interests in government-owned property are taxable under our decision in *Mesa Verde III*. The district court disagreed, affirming SBOE's order. The court of appeals, in affirming the district court, based its ruling on the reasoning stated in *Vail Associates. Black,* No. 97CA1642, slip op. at 4. Judge Roy dissented, for the reasons he set forth in his *Vail Associates* dissent. *Id.* at 6.

### C. The *Mesa Verde* Cases and the 1996 Legislation

Section 39–3–136 was not enacted in a vacuum, but rather was a direct legislative response to the third in a series of cases involving the taxation of private possessory interests in tax-exempt federal property in Mesa Verde National Park. In 1972, we were called upon to address Montezuma County's taxation of improvements used by the Mesa Verde Company in operating its concession in the national park.[7] *See Mesa Verde Co. v. Board of County Comm'rs,* 178 Colo. 49, 51, 495 P.2d 229, 230 (1972) (*Mesa Verde I*). Although the United States held title to the improvements on federal lands, the Mesa

---

6. The fourteen counties were Arapahoe, Archuleta, Boulder, Clear Creek, Eagle, Grand, Gunnison, Jefferson, Montezuma, Pitkin, Routt, Summit, Teller and Weld.

7. The Mesa Verde Company had been operating the concession since 1937. *See* Gilbert R. Wenger, *The Story of Mesa Verde National Park* 90 (1988).

Verde Company had a contractual right to control them and a right to the occupation, use, enjoyment, and profits of the property. We thus determined that the Mesa Verde Company had a significant ownership interest in the improvements—an interest different from the ownership of the United States—that was subject to county taxation.[8] Our rationale included reliance on Article X's requirement of fair and just sharing of taxation among all private owners making similar uses of property, whether or not they held title:

> Strong policy considerations underlie our decision to allow ad valorem taxation of appellant's improvements, despite the fact that legal title is vested in the United States. *After examining the ownership interest possessed by appellant,* it appears that the Mesa Verde Company has full use of the improvements, as well as the right to operate these properties for private profit. *In such cases, where a party has the right to possession, use, enjoyment, and profits of the property, that party should not be permitted to use the bare legal title of the Government to avoid his fair and just share of state taxation.*

*Id.* at 56–57, 495 P.2d at 233 (emphasis added).

Three years after our decision in *Mesa Verde I,* the General Assembly adopted legislation entitled "An Act Concerning the Taxation of a Possessory Interest in Property Otherwise Exempt from Taxation," ch. 342, secs. 1–5, 1975 Colo. Sess. Laws 1462. This new legislation had the intent of: (1) recognizing that private landowners and private possessory interest holders conducting a business for profit should be treated the same for tax purposes; and (2) ensuring that delinquent taxes on private possessory interests would not become a lien against the

public property. The statute provided, in part:

**39–3–112. Taxation of Exempt Property—taxes not to become lien.** (1) When any property which for any reason is exempt from taxation is leased, loaned, or otherwise made available to and used by a private individual, association, or corporation in connection with a business conducted for profit, the lessee or user thereof shall be subject to taxation in the same amount and to the same extent as though the lessee or user were the owner of such property, . . . .

(2) Taxes shall be assessed to such lessee or user of property and collected in the same manner as taxes assessed to owners of such property; except that such taxes shall not become a lien against the property. When due, such taxes shall be a debt due from the lessee or user to the board of county commissioners for the county where said property is located, and in the city and county of Denver to such other body as is authorized by law to levy taxes, and shall be recoverable by such body by direct action in debt on behalf of each governmental entity for which a tax levy has been made.

Ch. 342, sec. 3, § 39–3–112(1)(2), 1975 Colo. Sess. Laws 1462–63.

The legislature recodified this section as section 39–3–135 and amended it several times to provide exemptions from taxation for certain private possessory interests. *See* § 39–3–135, 16B C.R.S. (1993 Supp.). These amendments, constituting the General Assembly's first attempts to exempt possessory interests in tax-exempt property from taxation, gave rise to the second and third decisions in the *Mesa Verde* trilogy.

In 1989, the Montezuma County Board of Equalization ordered the County Assessor to

---

8. Long before we decided *Mesa Verde I,* Colorado statutes recognized that possessory interests in federal land are real property. *See Gillett v. Gaffney,* 3 Colo. 351, 358 (1877) (noting that from the first territorial legislature, Colorado defined "any right to occupy, possess and enjoy any portion of the public domain" to be "a chattel real possessing the legal character of real estate," a departure from the common law concept of naked possession that we termed "remarkable"). This provision affording possessory interests in public land the status of real property is still in effect. *See* § 36–2–101, 10 C.R.S. (2000).

list, appraise, and value the Mesa Verde Company's possessory interest in federal property within Mesa Verde National Park. The company appealed to the district court, which ruled that the County Board and Assessor lacked standing in court to raise a constitutional challenge to the statute conferring a tax exemption on the company. In the absence of a legislative grant of standing authority to the county, we agreed that the county lacked standing. *See Mesa Verde Co. v. Montezuma County Bd. of Equalization*, 831 P.2d 482, 485 (Colo.1992) (*Mesa Verde II* ). The General Assembly subsequently conferred standing on counties in such cases by statute.[9] *See* § 30–11–105.1, 9 C.R.S. (2000); *Vail Assocs.*, 983 P.2d at 52.

Consequently, in 1995 we addressed the constitutionality of certain exemptions to possessory interest taxation embodied in the amendments to then-existing section 39–3–135. *See Mesa Verde III*, 898 P.2d at 2. In reliance on the text of the taxation statutes and our rationale in *Mesa Verde I*, we said in *Mesa Verde III* that its "possessory and usufructuary rights" in federal property are "interest[s] in land" and "real property" that is subject to property taxation. *Id.* at 5. In addition to a trilogy of Supreme Court cases led by *United States v. City of Detroit*, 355

U.S. 466, 78 S.Ct. 474, 2 L.Ed.2d 424 (1958),[10] we also placed reliance on two additional decisions for the proposition that the "use and possession of federal land by a private party is taxable" in Colorado, so long as the county tax levy operates to "segregate private from federal interests." 898 P.2d at 10; *see United States v. Colorado*, 627 F.2d 217, 221 (10th Cir.1980); *Southern Cafeteria, Inc. v. Property Tax Adm'r*, 677 P.2d 362, 365 (Colo.App.1983).

Turning to the specific possessory interest exemptions embodied in section 39–3–135, we addressed "whether the limitations created by the second sentence of section 39–3–135(1) and section (4)(c) are constitutional under Article X of the Colorado Constitution." *Mesa Verde III*, 898 P.2d at 7. These provisions exempted from taxation the use a concessionaire made of the property owned by the United States in a national park. *Id.* Notwithstanding these provisions, then-existing sections 39–3–135(4)(c) and 39–3–135(6) continued to provide for taxation of other possessory interests in federal property, including ski areas. *Id.* at 11.

Our decision invalidated the statutory exemptions. We relied on this court's precedent, holding "that the general assembly may

---

**9.** The Board of Assessment Appeals argues that section 30-11-105.1 only allows a County to Challenge the constitutionality of section 39-3-136 in the district court. The court of appeals held that section 30-11-105.1 granted the counties and county officials the implied authority to appear before the BAA to defend their actions and to challenge the constitutionality of section 39-3-136 in judicial proceedings. *See Vail Assocs.*, 983 P.2d at 52. We agree. If section 30-11-105.1 were strictly construed to limit standing to actions before the district court, this would mean that counties could raise the constitutional issue only in district court and not before us or in the court of appeals. This would be an absurd reading of the legislature's intent. Moreover, we recognized county standing in *Mesa Verde III* to pursue the county's interest in possessory interest taxation. *See Mesa Verde III*, 898 P.2d at 3-4.

**10.** In these three cases, the Supreme Court held that states could tax private interests in federally owned real and personal property obtained by lease, permit, or contract, as long as the tax was not levied upon the government's ownership in-

terest. *See City of Detroit v. Murray Corp. of Am.*, 355 U.S. 489, 78 S.Ct. 458, 2 L.Ed.2d 441 (1958) (private interest obtained by contract); *United States v. Township of Muskegon*, 355 U.S. 484, 78 S.Ct. 483, 2 L.Ed.2d 436 (1958) (private interest obtained by permit); *United States v. City of Detroit*, 355 U.S. 466, 78 S.Ct. 474, 2 L.Ed.2d 424 (1958) (private interest obtained by lease). The Supreme Court's trilogy effectively removed any impediment we had held to exist against state taxation of any private interest in federal lands. In *Colorado Farm & Live Stock Co. v. Beerbohm*, 43 Colo. 464, 473, 96 P. 443, 446 (1908), we held that the United States or the state must pass title to the lands before the private party's interest could be taxable; we relied on then-applicable federal cases prohibiting taxation while the government still held title to secure payment for the lands. The *City of Detroit* trilogy and other Supreme Court cases overruled these cases on which *Beerbohm* was based. *See, e.g., S.R.A., Inc. v. Minnesota*, 327 U.S. 558, 568–69, 66 S.Ct. 749, 755–56, 90 L.Ed. 851, 859 (1946) (distinguishing cases relied upon by *Beerbohm* and altering the rule announced in them).

not exempt from taxation any property which is not specifically exempted in Article X of the Colorado Constitution." *Id.* at 7 (citing *Denver Beechcraft v. Board of Assessment Appeals,* 681 P.2d 945, 948 (Colo.1984); *Young Life Campaign v. Board of County Comm'rs,* 134 Colo. 15, 24, 300 P.2d 535, 540 (1956); *Logan Irrigation Dist. v. Holt,* 110 Colo. 253, 257, 133 P.2d 530, 532 (1943)). "The only qualification to this rule, which bars tax exemptions unless authorized by the Colorado Constitution, is that property owned by the United States government may not be subjected to state taxation under the Supremacy Clause of the United States Constitution." *Mesa Verde III,* 898 P.2d at 7. Pointing out the specific categories of exemption specified by Article X, we held that "the limitations on taxation of the use and possession of federal land under sections 39–3–135(1) and (4)(c) fall into none of these categories of exemptions authorized under the Colorado Constitution" and, accordingly, these provisions were unconstitutional. *Id.* at 8.

### D. Senate Bill 96–218

■ In direct response to our decision in *Mesa Verde III,* the General Assembly enacted Senate Bill 96–218, which repealed section 39–3–135 and added a new section 39–3–136. Act approved June 5, 1996, ch. 297, secs. 1–3, 1996 Colo. Sess. Laws 1849–52. This addition to the exemption provisions of the tax code reads:

**39–3–136. Legislative declaration—taxation of exempt property—possessory interests.** (1) The general assembly hereby finds and declares that:

(a) Section 3 of article X of the state constitution does not require the taxation of possessory interests, which are rights to use property that do not constitute the substantial equivalent of complete ownership of the property, in land, improvements, and personal property that are otherwise exempt from property taxation, absent express statutory authorization;

(b) This position is based, in part, upon the written proceedings of the 1875 Colorado constitutional convention, which reflect that the first draft of section 3 of article X of the state constitution expressly provided for the taxation of "all property, real, personal or possessory", while the final version of this provision adopted by the constitutional convention provided only for the taxation of "all property, real and personal" and did not refer to possessory property;

(c) In the opinion issued on April 24, 1995, entitled Mesa Verde Company v. The Montezuma County Board of Equalization and the Montezuma County Assessor, and the Property Tax Administrator of the State of Colorado ("Mesa Verde II"), 898 P.2d 1 (Colo.1995),[11] the Colorado supreme court held that certain possessory interests in land are "real property" within the meaning of section 39–1–102(14)(a) and are therefore subject to property taxation;

(d) If, based upon the supreme court's decision in Mesa Verde II, possessory interests are taxable, a variety of possessory interests, such as grazing leases and permits on government land or government employees' parking spaces in government-owned garages, become subject to property taxation and could be valued by different methods;

(e) Due to the supreme court's decision in Mesa Verde II, the property tax treatment of possessory interests in exempt properties needs to be addressed to ensure the uniformity required by section 3 of Article X of the state constitution;

(f) Subsection (2) of this section is intended to clearly state that possessory interests in exempt property shall be subject to property taxation only upon enactment of specific statutory provisions directing such taxation;

(g) The provisions of section 39–1–102(14)(a) and (14)(c) and section 39–1–

**11.** We refer to the case cited in section 39–3–136 as *Mesa Verde III* in this opinion.

106 do not direct the taxation of possessory interests in exempt properties; and

(h) Subsection (2) of this section shall not apply to and shall not be construed to affect or change the taxation of equities in state lands pursuant to section 39–5–106, the taxation of mines, quarries, or minerals, including hydrocarbons, pursuant to section 39–1–102(14)(b), articles 6 and 7 of this title, and any other article of this title, or the taxation of public utilities pursuant to article 4 of this title.

(2) Possessory interests in real and personal property that is exempt from taxation under this article shall not be subject to property taxation unless specific statutory provisions have been enacted that direct the taxation of such possessory interests.

At the same time, the legislature amended section 39–1–106: [12]

For purposes of property taxation, it shall make no difference that the use, possession, or ownership of any taxable property is qualified, limited, not the subject of alienation, or the subject of levy or distraint separately from the particular tax derivable therefrom. Severed mineral interests shall also be taxed. *Nothing in this section shall be construed to direct the taxation of possessory interests in real or personal property that are not subject to taxation in accordance with section 39–3–136(2).*

(Emphasis added to show amendment.)

## II.

We begin by discussing the standard of review governing this case. We then determine the constitutionality of section 39–3–136 in two parts. First, we conclude that section 39–3–136, based upon its plain language and its context within the entirety of the tax code, creates an exemption for certain forms of property that would otherwise be subject to taxation under the statutes. We then examine whether this exemption is authorized under Article X of the Colorado Constitution.

Because we find no constitutional provision authorizing the exemption of particular private possessory interests in tax-exempt land—other than that provided for non-producing unpatented mining claims, *see* Colo. Const. art. X, § 3(1)(b)—we hold that section 39–3–136 creates an unconstitutional exemption for certain forms of otherwise taxable property. We therefore reverse the judgments of the court of appeals.

### A. Standard of Review

■ Pursuant to Colorado Constitution Article VI, section 1, the judicial branch of Colorado government is empowered to construe the constitution's meaning. While courts consider legislative declarations in the construction of constitutional provisions, *see Winslow Constr. Co. v. City & County of Denver*, 960 P.2d 685, 694 (Colo.1998), the judiciary is the final arbiter of what the laws and the constitutions provide. *See City of Boerne v. Flores*, 521 U.S. 507, 532, 117 S.Ct. 2157, 2170, 138 L.Ed.2d 624, 646 (1997) (invalidating a statute that "attempt[ed] a substantive change in constitutional protections"); *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803); *Colorado Gen. Assembly v. Lamm*, 704 P.2d 1371, 1379 (Colo.1985) (noting that "interpretation of the constitution [is] a function at the very core of the judicial role").

■ We typically accord to legislative enactments a presumption of constitutionali-

---

**12.** Section 39–1–106 is the provision underlying the unit assessment rule. The function of this rule is to tax the greater ownership interest in lands and improvements based upon the assumption that the burden of the taxation will be passed, for example, to lessees therein as part of their rent payments. *See City & County of Den-* *ver v. Board of Assessment Appeals*, 848 P.2d 355, 359 (Colo.1993) (stating that "[t]he responsibility of apportioning the tax on [the] assessment among the various interest holders rests on the private parties who own these interests"). The rule does not serve as an exemption from taxation.

ty. *See City of Greenwood Vill. v. Petitioners for Proposed City of Centennial,* 3 P.3d 427, 440 (Colo.2000); *see also City of Boerne,* 521 U.S. at 535, 117 S.Ct. at 1271, 138 L.Ed.2d at 649. However, the legislature's construction of a statutory or constitutional provision is advisory, not binding. *See In re Interrogatory Propounded by Governor Roy Romer on House Bill No. 1353,* 738 P.2d 371, 373 n. 3 (Colo.1987).

█ In discharging our judicial function, we afford the language of constitutions and statutes their ordinary and common meaning. *People v. Banks,* 9 P.3d 1125, 1127 (Colo. 2000); *In re Interrogatories on House Bill 99–1325,* 979 P.2d 549, 554 (Colo.1999). We ascertain and give effect to their intent. *See City & County of Denver v. Gonzales,* 17 P.3d 137, 140 (Colo.2001); *Tivolino Teller House, Inc. v. Fagan,* 926 P.2d 1208, 1211 (Colo.1996). We construe statutory and constitutional provisions as a whole, giving effect to every word and term contained therein, whenever possible. *Havens v. Board of County Comm'rs,* 924 P.2d 517, 523 (Colo. 1996); *Colorado Ground Water Comm'n v. Eagle Peak Farms, Ltd.,* 919 P.2d 212, 218 (Colo.1996).

█ Because the principal design of the constitution's revenue provisions is to subject all private real and personal property to the payment of its fair proportion of taxation necessary for governmental purposes, unless the property falls within a constitutionally stated category of exemption, we resolve doubts regarding the meaning of a particular word or phrase of the revenue provisions of the statutory and constitutional language in favor of this "beneficent purpose." *People ex rel. Iron Silver Mining Co. v. Henderson,* 12 Colo. 369, 374, 21 P. 144, 146 (1889).

█ Article X of the Colorado Constitution structures and limits the legislature's

taxation powers, *see Bartlett & Co. v. Board of County Comm'rs,* 152 Colo. 388, 398, 382 P.2d 193, 199 (1963), providing the root fairness of treatment requisite to governmental legitimacy. Taxation is a legislative power, but is subject to constitutional limitations: "where constitutional provisions upon the subject do exist, they are to be regarded as limitations and restrictions upon the legislative power." *Board of County Comm'rs v. Rocky Mountain News Printing Co.,* 15 Colo.App. 189, 193–94, 61 P. 494, 496 (1900). The General Assembly's plenary taxation role includes providing definitions of taxable property and prescribing such regulations as will secure a just and equalized valuation for taxation of all property, real and personal. *See* § 39–1–101, 11 C.R.S. (2000) (quoting Article X, section 3 for the proposition that "the actual value of all real and personal property not exempt from taxation under this article shall be determined under general laws, which shall prescribe such methods and regulations as shall secure just and equalized valuations for assessment of all real and personal property not exempt from taxation under this article"); *City & County of Denver v. Hobbs Estate,* 58 Colo. 220, 231, 144 P. 874, 878 (1914).

We proceed with our analysis mindful of these constitutional grants of, and limitations on, legislative authority.

### B. Possessory Interest Taxation

█ We agree with the fundamental assumption of section 39–3–136 that Article X is not self-executing. Its implementation depends on exercise of the General Assembly's legislative authority. *See City & County of Denver v. Security Life & Accident Co.,* 173 Colo. 248, 253, 477 P.2d 369, 372 (1970); [13] *Stanley v. Little Pittsburg Mining Co.,* 6 Colo. 415, 419 (1882). However, this authori-

---

**13.** Vail, BAA, and SBOE rely on *Security Life* in support of section 39–3–136's validity. In that case, Denver sought to assess a leaseholder's interest in office fixtures owned by national banks. The personal property of the banks was at the relevant time exempt from state taxation under federal law. We said that "taxation must be under the authority of a statute and cannot be

authorized solely by our constitutional provisions." *Security Life,* 173 Colo. at 253, 477 P.2d at 372. Our extended review of the subsequent *Mesa Verde I* and *Mesa Verde III* cases convinces us that the current tax code authorizes the taxation of all real and personal property, which includes private possessory interests in tax-exempt property, but that section 39–3–136 pro-

ty is not unconstrained. First, the General Assembly cannot refuse to exercise its taxation authority; it must enact tax statutes so that governmental operations may be funded. *See, e.g.,* Colo. Const. art. X, § 2; *Johnson v. McDonald,* 97 Colo. 324, 347, 49 P.2d 1017, 1028 (1935) (holding that Article X, section 2 is a mandate to the legislature to provide for an annual tax); *People ex rel. Regents of the State Univ. v. State Bd. of Equalization,* 20 Colo. 220, 230, 37 P. 964, 968 (1894) (describing the creation of an annual tax pursuant to Article X, section 2 as the "imperative duty of the legislature"); *In re Appropriations by Gen. Assembly,* 13 Colo. 316, 326, 22 P. 464, 467 (1889) (same); *People ex rel. Thomas v. Scott,* 9 Colo. 422, 428, 12 P. 608, 611 (1886) (same).[14] Second, it cannot provide purely statutory exemptions from taxation that are not within the constitutional exemption categories of Article X. *See Mesa Verde III,* 898 P.2d at 7. Third, it must not enact provisions that exempt certain private interests from bearing their fair and proportionate burden of taxation. *See Mesa Verde I,* 178 Colo. at 57, 495 P.2d at 233.

■ The doctrine of stare decisis provides that a court will follow the rule of law it has established in earlier cases, unless clearly convinced that the rule was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come from departing from precedent. *People v. Blehm,* 983 P.2d 779, 788 (Colo.1999). We determined in *Mesa Verde III* that, even in the absence of a specific provision directing the taxation of possessory interests, Colorado's statutory and constitutional law nevertheless provided for their

taxation. In reaching this conclusion, we examined three specific provisions of the tax code: sections 39–1–102(16), 39–1–102(14), and 39–1–111(1). These sections remain in place today and are unchanged from when we considered them in *Mesa Verde III.*[15]

Section 39–1–102(16) currently provides:

"Taxable property" means all property, real and personal, not expressly exempted from taxation by law.

Section 39–1–111(1) currently provides:

No later than December 22 in each year, the board of county commissioners in each county of the state, or such other body in the city and county of Denver as shall be authorized by law to levy taxes, *shall,* by an order to be entered in the record of its proceedings, *levy against the valuation for assessment of all taxable property* located in the county on the assessment date, and in the various towns, cities, school districts, and special districts within such county, the requisite property taxes for all purposes required by law.

(Emphasis added.)

Section 39–1–102(14) currently provides, in part:

"Real Property" means: (a) *All* lands or *interests in lands* to which title or the right of title has been acquired from the government of the United States or *from sovereign authority ratified by treaties entered into by the United States, or from the state;* ....

(Emphasis added.) In *Mesa Verde III,* we held that section 39–1–102(14)(a) applies to

---

vides an unconstitutional exemption to such taxation. To the extent that *Security Life* suggests otherwise, our later, more detailed, and more reasoned decisions in *Mesa Verde I* and *Mesa Verde III* effectively overruled it. *See Mesa Verde III,* 898 P.2d at 7–8.

**14.** The language of Article X, section 2 "is clearly applicable to ad valorem taxes" such as the tax on real property in Title 39. *Johnson,* 97 Colo. at 348, 49 P.2d at 1028.

**15.** Additionally, the language of sections 39–1–102(14) and 39–1–102(16) is identical to the pro-

visions in place when we decided *Mesa Verde I. See* §§ 137–1–1(2) (defining "real property") & 137–1–1(4) (defining "taxable property"), 9 C.R.S. (1965 Supp.). The substantive provisions of section 39–1–111(1), are also unchanged from *Mesa Verde I. See* § 137–1–11(1) C.R.S. (1969 Supp.). Because these operable provisions of the tax code remain unchanged, we do not address the proposition set forth in section 39–3–136(1)(b) that Article X does not mandate the taxation of possessory interests.

include private possessory interests in federal land within the plain language of the legislature's still-existing definition of real property, because "like all federal land, title to this land was nevertheless acquired 'from sovereign authority ratified by treaties entered into by the United States, or from the state[ ].'" *Mesa Verde III,* 898 P.2d at 5.[16]

■ Because possessory interests fall within the statutory definition of "real property" in section 39–1–102(14)(a), they qualify as "taxable property" under section 39–1–102(16). We therefore observed in *Mesa Verde III* that taxation of private possessory interests in federal land was authorized, even in the absence of section 39–3–135:

> [B]ecause Mesa Verde's possessory interest meets the definition of taxable property under § 39–1–102(16), even if Mesa Verde's interest were not taxable under any provision of § 39–3–135, it is taxable under § 39–1–111. Section 39–1–111 authorizes the imposition of property taxes against all "taxable property" in a county.

*Mesa Verde III,* 898 P.2d at 12 n. 17.

The amendments the General Assembly made to the tax statutes in 1996 through Senate Bill 96–218 did not alter these provisions or redefine real or personal property to exclude possessory interests. Nor does the plain language of section 39–3–136(1)(g)— which states that the provisions of section 39–1–102(14)(a) "do not direct the taxation of possessory interests in exempt properties"— change the operative definition of "real property" in the tax code. Section 39–1–102(14)(a) does not *direct* the taxation of any property; it is a purely definitional provision and is labeled as such in the tax code. *See* § 39–1–102, 11 C.R.S. (2000). Section 39–1–

111 contains the direction to the counties to assess all taxable property, as provided by section 39–1–102(16). Defining property for taxation purposes and directing taxation of that property are different concepts. Although it could have used language in sections 39–1–102(14), 39–1–102(16), and 39–3–136 redefining "real property" so as not to include possessory interests, the legislature did not do so.

■ Instead, section 39–3–136 simply prohibits the taxation of possessory interests in tax-exempt property, except for property still subject to taxation under section 39–3–136(1)(h). Such language of prohibition is a limitation or exception to taxation under our holding in *Mesa Verde III.* The test for determining whether a statutory provision states an exemption is whether that provision "qualifies" or "limits" the "general taxation provision for such property." *Mesa Verde III,* 898 P.2d at 6. Section 39–3–136 plainly has such effect. Accordingly, we must determine whether this statutory exemption is constitutional.

### C. Possessory Interest Exemption

■ The Colorado Constitution directs that all real and personal property, as defined by the legislature, must be taxed unless it is exempted in accordance with law. *See* Colo. Const. art. X, §§ 3(1)(a) & 6. While the legislature may establish classes of property and provide suitable and different methods for ascertaining the value for taxation of the different classes, *American Mobilehome Ass'n v. Dolan,* 191 Colo. 433, 437–38, 553 P.2d 758, 762 (1976); *Ames v. People ex rel. Temple,* 26 Colo. 83, 102, 56 P. 656, 662–63 (1899), it may not create exemptions not con-

---

16. The language of section 39–1–102(14)(a) that we pointed to in *Mesa Verde III*—"acquired from ... sovereign authority ratified by treaties entered into by the United States"—was added by the General Assembly in 1964. *See* ch. 94, sec. 1, § 137–1–1(2), 1964 Colo. Sess. Laws 674. The 1964 amendment revised the definition of "real property" to include interests, exhibiting less than complete ownership, in land still owned by the United States. *See id.* This change in definition had particular significance because Colora-

do is one of the thirty states that Congress carved out of the public domain, and the United States had obtained the land comprising the Colorado Territory through the 1803 Louisiana Purchase and the 1848 Treaty of Guadalupe Hidalgo. *See, e.g.,* Loren L. Mall, *Public Land and Mining Law,* at 1–6 to 1–7 (1984). The General Assembly enacted this revised definition of taxable real property after the United States Supreme Court had issued its *City of Detroit* trilogy in 1958.

tained in the constitution. *See Mesa Verde III*, 898 P.2d at 7. Private possessory interests in tax-exempt lands are not among the exemption categories contained in Article X, except for the exemption for non-producing unpatented mining claims. *See* Colo. Const. art. X, § 3(1)(b).

 In addition, taxation across each class of property must be uniform. *See* Colo. Const. art. X, § 3(1)(a); *Pueblo Junior Coll. Dist. v. Donner*, 154 Colo. 26, 31–32, 387 P.2d 727, 730 (1963). In section 39–3–136, the General Assembly created a class of property that it termed "possessory interests," and defined that class to constitute "rights to use property that do not constitute the substantial equivalent of complete ownership in the property." § 39–3–136(1)(a). By its own definition, the legislature recognized that the class of possessory interests encompasses more than private possessory interests in lands otherwise exempt from taxation. Rather, the class includes *all* rights to use land that do not substantially equal the complete "bundle of sticks" that comprise fee ownership.[16] Under Article X, section 3, all property within this legislative classification must be taxed uniformly.

Section 39–3–136, however, does not tax all possessory interests uniformly. Despite having defined the class of possessory interests broadly, the General Assembly exempts from taxation the subclass of private possessory interests in otherwise tax-exempt property. Section 39–3–136(2) provides:

> Possessory interests in real or personal property that is exempt from taxation under this article shall not be subject to property taxation unless specific statutory provisions have been enacted that direct the taxation of such possessory interests.

By its plain language, section 39–3–136(2) exempts only those possessory interests in property that is itself exempted from taxation under Title 39, Article 3 of the Colorado Revised Statutes. Other possessory interests continue to be taxed. Likewise, section 39–3–136(1)(g) refers exclusively to non-taxation of "possessory interests in exempt properties," not the entire class of possessory interests defined by the legislature.

Not only does section 39–3–136 treat certain possessory interests within the class it has created differently for taxation purposes, it also treats certain possessory interests *within the subclass* of possessory interests in tax-exempt property differently. Section 39–3–136(1)(h) specifically provides that the exemption of private possessory interests in otherwise tax-exempt lands shall not apply to or be construed to affect the ongoing taxation of equities in state lands; mines, quarries, or minerals, including hydrocarbons; or public utilities. For example, producing mineral leases in land owned by the federal government are still subject to taxation under section 39–3–136's scheme, even though they fall within the subclass of possessory interests in otherwise tax-exempt property. *See* § 39–6–106 (valuing producing interests in mines); *see also Rummel v. Musgrave*, 142 Colo. 249, 252, 350 P.2d 825, 826 (1960) (holding that "plaintiffs' possessory rights [in mines] by virtue of their leases with the United States of America are such an interest as is subject to taxation by the State of Colorado"); *Hagood v. Heckers*, 182 Colo. 337, 347–48, 513 P.2d 208, 214–15 (1973) (adopting the majority rule in western states that private oil and gas leases in federal lands are interests in real estate for the purpose of taxation, and stating that "we find no compelling reason in this instance to create an exemption for those who have assigned federal rather than private leases"); 30 U.S.C. § 189 (2000) (explicitly retaining the right of states and their subdivisions to collect taxes upon the output of mines "or other rights, property, or as-

---

16. The State Division of Property Taxation defines possessory interests in public property as follows: "Generally, [a] possessory interest constitutes a right to the possession and use of publicly owned property for a period of time less than perpetuity. It represents a portion of the bundle of rights that would normally be included in a fee ownership, and its value, therefore, is typically something less than the value in perpetuity of the whole bundle of rights." *Land Valuation Manual, supra*, at 7.3 (rev.vol.2000).

sets" of any lessee of the United States); *Land Valuation Manual, supra,* at 6.72 (rev. vol.2000). Similarly, mineral leases and equities in land purchased by private parties from the state under contract continue to be taxed, *see* § 39–5–106, 11 C.R.S. (2000), although they, too, are private possessory interests in otherwise tax-exempt property.[18]

Section 39–3–136 therefore: (1) defines a class of property known as "possessory interests"; (2) prohibits taxation of a subclass of that property—possessory interests in otherwise tax-exempt property—from taxation while continuing taxation of other possessory interests; and (3) carves out certain interests within the subclass for continued taxation. This disparate tax treatment within the same class of property is only permissible if the property exempted in the statute is also exempted in the constitution.

As adopted by the voters, Article X: (1) listed specific categories of property that the General Assembly could exempt from taxation; and (2) provided that all real and personal property not within the exemption categories, as implemented by the General Assembly, is subject to taxation. *See* Colo. Const. art. X, § 6 (stating that "[a]ll laws exempting from taxation property other than that specified in this article shall be void"). The exemption categories in the constitution included mineral claims for a certain number of years after which they would be taxable, as provided by statute, Article X, section 3;[19] publicly owned property, Article X, section 4; and property used solely and exclusively for religious worship, schools and strictly charitable purposes, Article X, section 5. *See The Constitution of the State of Colorado Adopted in Convention, March 14, 1876; Also the Address of the Convention to the People of Colorado* 29–30 (1876).

In 1988, Colorado voters amended the constitution to provide a specific exemption for one form of private possessory interests in tax-exempt property: non-producing unpatented mining claims in federal land. *See* Colo. Const. art. X, § 3(1)(b); House Concurrent Res. 1009, sec. 1, 1988 Colo. Sess. Laws 1457–58. The General Assembly referred this amendment to the voters. The comment explaining the General Assembly's proposal recognizes that unpatented mining claims are possessory interests and would be taxed in the absence of the amendment's approval by the voters:

> The owner of an unpatented mining claim holds a possessory interest in the federal land, which permits him to occupy the land, search for and remove mineral deposits within the stated boundaries of the

**18.** The constitution itself sets the valuation method for possessory interests that are producing minerals. *See* Colo. Const. art. X, § 3(1)(b) (stating that "the valuation for assessment for producing mines, as defined by law, and lands or leaseholds producing oil or gas, as defined by law, shall be a portion of the actual annual or actual average annual production therefrom, based on the value of the unprocessed material, according to procedures prescribed by law for different types of minerals"). Section 39–6–104, 11 C.R.S. (2000), classifies mineral interests, for valuation and assessment purposes, as producing and non-producing: "All mines . . . shall, for the purpose of valuation for assessment, be divided into two classes: Producing and nonproducing". *see also Land Valuation Manual, supra,* at 6.70–6.87 (rev.vol.2000) (addressing the valuation of: (1) non-producing patented mining claims; (2) non-producing severed mineral interests; and (3) other non-producing natural resource leaseholds and lands). Producing mines are valued in accordance with the mineral produced, § 39–6–106, and non-producing mines "shall be valued for assessment in the same manner as other real property," § 39–6–111(2). Although valuation can take production or non-production into account, the underlying taxation predicate is not the ownership of the mineral produced but of the ownership interest in the lands that gave the private party the right to produce the mineral, in the instance of leases, from lands owned by others.

**19.** As adopted in 1876, Article X, section 3 stated: "*[P]rovided,* that mines and mining claims bearing gold, silver, and other precious metals[ ] (except the net proceeds and surface improvements thereof[ ] ) shall be exempt from taxation for the period of ten years from the date of the adoption of this Constitution, and thereafter may be taxed as provided by law." *The Constitution of the State of Colorado Adopted in Convention, March 14, 1876; Also the Address of the Convention to the People of Colorado* 29 (1876) (emphasis in original).

claim and to employ people to work the claim. Ownership of the land resides with the federal government.... The proposal would discontinue the payment of property taxes by owners of nonproducing unpatented mining claims.

Legislative Council of the Colorado General Assembly, *An Analysis of 1988 Ballot Proposals*, Research Publication No. 326 at 9–10 (1988).

With the exception of the 1988 amendment to exempt non-producing unpatented mining claims, however, no provision of Article X exempts possessory interests in tax-exempt property from taxation. In the absence of a constitutional provision exempting the otherwise taxable property as defined by the legislature, the statutory exemption cannot stand. *See Mesa Verde III*, 898 P.2d at 7–8.

▪ The express language of section 39–3–136 operates as a purely legislative exemption to taxation that is not authorized under Article X. Under our holding in *Mesa Verde III*, we must conclude that this purely legislative exemption is unconstitutional. Accordingly, we agree with the dissent in *Vail Associates* and *Black* that *Mesa Verde III* controls our decision in this case and that section 39–3–136 constitutes an exemption from taxation in contravention of Article X. As we held in *Mesa Verde I*, 178 Colo. at 57, 495 P.2d at 233, "where a party has the right to possession, use, enjoyment, and profits of the property, that party should not be permitted to use the bare legal title of the Government to avoid his fair and just share of state taxation."

As a final matter, we note that the court of appeals held that the 1996 legislation redefined "real property" in the tax statutes so as to not include possessory interests. *Vail Assocs.*, 983 P.2d at 57. As we discussed in Part II.B., we disagree with this conclusion. Even if we were to assume, however, that the text of section 39–3–136(1)(g) did redefine "real property," the section is nevertheless unconstitutional because the redefinition does not exclude all possessory interests from

"real property," but only selected possessory interests in tax-exempt property. Therefore, the property class of "possessory interests" is not treated uniformly for taxation purposes.

## D. Significant Incidents of Private Ownership

During the 1996 enactment of section 39–3–136, the General Assembly expressed concern that the taxation of *any* possessory interest might lead to the taxation of *all* possessory interests, no matter how de minimis. *See* § 39–3–136(1)(d). Our decision does not reach so far. We recognize: (1) that the legislature has a determinative role in adopting valuation provisions consistent with the constitution, and has exercised its authority in this regard by adopting section 39–1–103(17); and (2) the taxation of private possessory interests in federal lands—which is permissible—must be distinguished from taxation of the underlying ownership of the land by the United States.

Thus, we identify and discuss the "significant incidents of ownership" of interests in tax-exempt property that are a predicate for taxation under the statutes and Article X. *Mesa Verde I*, 178 Colo. at 57, 495 P.2d at 233; *see also Rummel*, 142 Colo. at 250–53, 350 P.2d at 826–27 (discussing taxation of and incidents of ownership in mining claims); *Denver & Rio Grande Ry. Co. v. Church*, 17 Colo. 1, 5–8, 28 P. 468, 469–70 (1891) (same for railroad property); *Estes Park Toll Rd. Co. v. Edwards*, 3 Colo.App. 74, 77–78, 32 P. 549, 551 (1893) (same for right-of-way on federal land).

▪ First, our decision does not change the method of assessing and levying taxes on fee ownership interests. The unit assessment rule typically operates to tax land and improvements together, without the additional separate taxation of lesser interests therein, such as leaseholds, because taxation of the whole is presumed to include taxation of the derivative parts, with the owner passing on the burden of taxation as the fee owner chooses. *See City & County of Den-*

ver v. *Board of Assessment Appeals*, 848 P.2d 355, 358–59 (Colo.1993). When the fee holder is tax-exempt, however, the unit assessment rule operates to tax the private ownership interest in the land and improvements together in the absence of a fee owner who pays the full taxes and may distribute the burden thereof to others holding subsidiary interests.[20]

■ Second, for taxation to occur, the possessory interest in tax-exempt property must exhibit significant incidents of private ownership that distinguish it from the underlying tax-exempt ownership. *See United States v. Colorado*, 627 F.2d at 219. The tax must apply to the possessory owner's beneficial use, not to the property itself. *See United States v. Colorado*, 460 F.Supp. 1184, 1189 (D.Colo.1978), *aff'd*, 627 F.2d 217 (10th Cir. 1980).

■ Third, taxation of possessory interests in tax-exempt property depends upon three factors demonstrating ownership related to the party's "right to possession, use, enjoyment, and profits of the property." *Mesa Verde I*, 178 Colo. at 57, 495 P.2d at 233. These three factors are: (1) an interest that provides a revenue-generating capability to the private owner independent of the government property owner; (2) the ability of the possessory interest owner to exclude others from making the same use of the interest; and (3) sufficient duration of the possessory interest to realize a private benefit therefrom.[21]

■ Fourth, the General Assembly has authority to address methods of valuation and differences between types of possessory uses in assessing their value for taxation purposes. It has done so in anticipation that we might disagree with its legal interpretation. *See* § 39–1–103(17).[22]

In debating and adopting section 39–3–136, the General Assembly expressed particular

---

**20.** Vail, BAA, and SBOE also contend that the unit assessment rule does not anticipate the taxation of interests in lesser estates. This rule looks to the principal owner of the taxable real property interest for the payment of taxes due. Thus, the assessor can reach the entire value of the taxable property in one assessment. *See City & County of Denver v. Board of Assessment Appeals*, 848 P.2d at 359. We do not agree that the unit assessment rule can limit the operation of Article X. A fundamental purpose of the rule is to implement Article X by achieving "the constitutional mandate of uniformity by assuring horizontal equity between comparable parcels of property." *Id.* When the fee owner is tax exempt, as in the cases before us, the unit assessment rule—to be consistent with Article X—logically results in the assessment of the private possessory interest in both the government lands and improvements thereon, resulting ultimately in one tax assessment covering both.

**21.** Other states arising from the public domain follow a similar approach. The California legislature, for example, has adopted a statute setting forth the criteria of independence, durability and exclusivity. Cal. Rev. & Tax Code § 107 (Deering 2000); *City of San Jose v. Carlson*, 57 Cal. App.4th 1348, 67 Cal.Rptr.2d 719, 721 n. 2 (1997). As the California cases demonstrate, concurrent uses of property are not necessarily inconsistent with exclusivity. *See, e.g., City of San Jose*, 67 Cal.Rptr.2d at 725; *Scott–Free River Expeditions, Inc. v. County of El Dorado*, 203 Cal.App.3d 896, 250 Cal.Rptr. 504, 508 (1988). Montana employs a beneficial use test that focus-

es on whether a party has an enforceable right to beneficial use of a property and the ability to exclude others. *See Pacific Power & Light Co. v. Department of Revenue*, 237 Mont. 77, 773 P.2d 1176, 1180–81 (1989). Oregon recognizes a "flexible" concept of possession: "[A]lthough a 'possessory' interest always is marked by some degree of control and some degree of exclusivity, neither absolute control nor absolute exclusivity is required." *Power Res. Coop. v. Department of Revenue*, 330 Or. 24, 996 P.2d 969, 973 (2000).

**22.** Because the application of the legislature's valuation criteria for possessory interests is not at issue in the cases before us, we do not construe the meaning or effect of section 39–1–103(17) here. However, we observe that the valuation procedures for ski areas in section 39–1–103(17)(a)(I) appear parallel to those of the Division of Property Taxation before repeal of section 39–3–135 and adoption of section 39–3–136. *Compare Land Valuation Manual, supra*, Addendum VII-A, at 1 (rev.vol.1996) *with* § 39–1–103(17)(a)(I). The method of valuation for possessory interests other than ski areas also reflects the prior assessment method. *Compare Land Valuation Manual, supra*, § VII (1989) *with* § 39–1–103(17)(a)(II)(A). These methods also appear to reflect the three factors we have identified from Colorado precedent as exhibiting the significant incidents of private ownership that are the predicate for taxation of possessory interests in government-owned lands: an interest that provides a revenue-generating capability to the private owner independent of the government owner; ability to exclude others making the

concern about tax impacts on agriculturists should possessory interests in government-owned lands be taxable. *See* § 39–3–136(1)(d). However, as we discussed in *Boulder County Board of Equalization v. M.D.C. Construction Co.*, 830 P.2d 975, 978 (Colo.1992), Article X, section 3, gives special tax consideration to agriculture by providing that the actual value of agricultural lands shall be determined solely by consideration of the earning or productive capacity of such lands capitalized at a rate as prescribed by law. We emphasized this difference: "The Colorado Constitution states that all taxes upon real property shall be uniform and distinguishes agricultural and residential property from other types of real property for assessment purposes." *M.D.C.*, 830 P.2d at 978; *see also id.* at 981 (holding that surface use of land for monetary profit is the subject of the statutory provisions implementing Article X's special treatment of agricultural taxation); § 39–1–103(5)(a) (providing that the "actual value of agricultural lands, exclusive of building improvements thereon, shall be determined by consideration of the earning or productive capacity of such lands during a reasonable period of time, capitalized at a rate of thirteen percent").[23]

### *Conclusion*

■■■ We hold that section 39–3–136 unconstitutionally exempts from taxation certain possessory interests in tax-exempt property that, like Vail, evidence significant incidents of ownership. We conclude that Vail's possessory interests in federal property and improvements thereon for its ski area constitute real property that is subject to taxation under the Colorado statutes and Article X of the Colorado Constitution. Vail owns a significant ownership interest in federal property from which it derives revenues for private

benefit; it can exclude others from using the federal property it occupies for the same use, and its interest extends to the year 2031, a significant period of time for realizing its private benefit.

■■■ Our authority and duty extends to determining whether severance of unconstitutional portions of the statute is viable. When we can, we sever any provision that we hold to be unconstitutional from those provisions that stand despite the severance. *See* § 2–4–204, 1 C.R.S. (2000); *Rodriguez v. Schutt*, 914 P.2d 921, 929 (Colo.1996). Accordingly, we sever those unconstitutional portions of the statute, *see* sections 39–1–106 (final sentence) and 39–3–136, and leave in place section 39–1–103(17), the valuation provisions of the statute that the General Assembly intended to apply if we disagreed with its interpretations of law.

### III.

Accordingly, we reverse the judgments of the court of appeals in the *Vail Associates* and *Black* cases and remand with instructions to return them to the Board of Assessment Appeals and the State Board of Equalization, and thence to the County Boards of Assessment and the County Assessors, for further proceedings consistent with this opinion.

Justice KOURLIS dissents, and Justice RICE and Justice COATS join in the dissent.

Justice KOURLIS dissenting:

The Majority concludes that the General Assembly's decision not to impose a property tax on possessory interests in federal recreational leases is unconstitutional. Initially, the majority reads the applicable statutes, as

---

same beneficial use; and sufficient duration of the interest for realizing a private benefit therefrom. On remand, the parties have their rights and remedies under the valuation, assessment, and levy procedures, as the tax authorities proceed.

**23.** The statutes applicable to agricultural taxation provide a definition of "Agricultural land"

which includes both "the owner of the land or a lessee." § 39–1–102(1.6)(a). The definitions of "farm" and "ranch" include parcels of land used for producing agricultural products or for grazing "for the primary purpose of obtaining a monetary profit." §§ 39–1–102(3.5); 102(13.5).

interpreted in *Mesa Verde Co. v. Montezuma County Board of Equalization*, 898 P.2d 1 (Colo.1995) (*Mesa Verde III* ), to compel the inclusion of possessory interests in "real property" for purposes of taxation, despite the specific statute that excludes those interests from the definition of real property. Additionally, the majority states that because all tax exemptions must be constitutional, not statutory, section 39–3–136, 11 C.R.S. (2000), operates as an impermissible statutory exemption.

Lastly, the majority holds that by choosing to tax mines, quarries and minerals, and equities in state lands, the General Assembly has created a tax scheme in which some possessory interests are taxed—which then, in turn, mandates the taxation of all possessory interests in order to assure uniform and fair taxation.

I disagree with all three propositions. In my view, the legislative intent *not* to tax possessory interests manifest in section 39–3–136(1)(a)(b), is controlling and does not contravene the Colorado Constitution or other statutory provisions. Rather, it falls within the exercise of clear legislative prerogative. Accordingly, I respectfully dissent and would affirm the court of appeals' decision.

## I.

I begin by dispelling any notion that the constitution itself contemplates or mandates the taxation of possessory interests. Article X, section 2 states that "[t]he General Assembly shall provide by law for an annual tax sufficient, with other resources, to defray the estimated expenses of the state government for each fiscal year." Colo. Const. art X, § 2. Article X, section 3 further explains that "[e]ach property tax levy shall be uniform upon all real and personal property not exempt from taxation under this article." *Id.* art X, § 3(1)(a). From that language, I draw the conclusion that the General Assembly has the authority to impose tax in order to finance the operations of state government.

Therefore, I find the plain language of the constitution unambiguous. It includes no reference to possessory interests, and I conclude that the framers intended to consign the issue to legislative discretion in defining real property as necessary to fund the state budget. The rules of constitutional construction require that we construe constitutional language by using its ordinary meaning. *Bd. of Educ. v. Booth*, 984 P.2d 639, 646 (Colo. 1999). Here, that meaning is clear.

Furthermore, the first draft of section III of article X did indeed include "all property, real, personal or possessory," while the final version omitted possessory interests and provided for the taxation of "all property, real and personal." I give weight to that omission. The *Proceedings of the Constitutional Convention* 414 (1907), demonstrate that the framers of the constitution expressly chose to omit the word "possessory" from the Article. From that choice, I draw the conclusion that they understood the difference between ownership and possession, that they expressly considered whether the constitution should specifically refer to the taxation of possessory interests, and that they ultimately determined that it should not. I would follow the canon of construction that the inclusion of certain terms implies the exclusion of others. *Dill v. People*, 94 Colo. 230, 235, 29 P.2d 1035, 1037 (1933). The exclusion of the term "possessory" in article X, section 3 indicates to me that the framers intended to allow the legislature to determine whether or not to impose real property taxes on possessory interests.

In fact, the constitution has only a power of limitation, not mandate, in the area of taxation. "[E]xcept as limited by the constitution, the legislative department of government has the unlimited power of taxation." *Parsons v. People*, 32 Colo. 221, 235, 76 P. 666, 670 (1904). As the court of appeals noted, the constitution is not a grant of authority to the General Assembly, but rather a limitation on its powers. *Vail Assocs., Inc. v. Eagle County Bd. of County Comm'rs*, 983 P.2d 49, 54 (Colo.App.1998).

The General Assembly defines and implements the constitutional authority to impose

property taxes. Colo. Const. art. X, § 2 (stating that "[t]he general assembly shall provide by law for an annual tax"). Because article X is not self-executing, it requires implementing legislation. *City & County of Denver v. Sec. Life & Accident Co.*, 173 Colo. 248, 253, 477 P.2d 369, 372 (1970). The General Assembly's authority to tax necessarily includes the prerogative to classify and define real property.[23] *Am. Mobilehome Ass'n v. Dolan*, 191 Colo. 433, 437, 553 P.2d 758, 762 (1976) (stating "In taxation, even more than in other fields, the legislature has greater freedom to classify."). Therefore, unless and until the General Assembly defines a category of real property and enacts a method for collecting taxes on such property, it cannot be taxed. The constitution does not, in itself, allow or prohibit the General Assembly from classifying real property as long as that body recognizes and acts within the limits set forth therein. *Ames v. People ex rel. Temple*, 26 Colo. 83, 102, 56 P. 656, 662 (1899). Taxation must be imposed by authority of statute and cannot be authorized solely by the constitution. *Sec. Life*, 173 Colo. at 253, 477 P.2d at 372.

## II.

It follows then that the decision whether or not to tax possessory interests rests with the legislature. The General Assembly exercises that power in part through the definition of real property. In *People ex rel. Iron Silver Mining Co. v. Henderson*, we stated that the principal design of article X, section 3 is to "subject all *taxable property* to the payment of its fair and equitable proportion of the revenue necessary for governmental purposes." 12 Colo. 369, 374, 21 P. 144, 146 (1889) (emphasis added). The legislature, not this court, has the power to define taxable property. *Am. Mobilehome Ass'n*, 191 Colo. at 438, 553 P.2d at 762.

### A.

Over time, the General Assembly has made various decisions regarding possessory inter-

est taxation in the state. After passage of the constitution, the General Assembly convened and passed an act implementing article X, section 3. Colo. General Laws, ch. LXXXVII, Revenue, (1877). The first General Assembly enacted statutes that taxed only real property ownership, not possession. *Id.* §§ 2242, 2244.

The legislature continued to refrain from taxing possessory interests for nearly one hundred years. Then, in 1975, the legislature enacted the 1975 Possessory Interest Act. § 39–3–112, 11 C.R.S. (1975) (later recodified as section 39–3–135, 11 C.R.S. (2000)). This act added possessory interests to the property tax statute. The 1975 Possessory Interest Act soon ran into the legal, economic, and practical difficulties associated with assessing possessory interests. Within its first four years of applicability, the General Assembly enacted exceptions to the statute, including personal property, public parks, markets, fairgrounds and similar property, public airports, state lands managed by the State Board of Land Commissioners, property used by airline companies, property furnished to a government contractor to fulfill a government contract, and property leased prior to 1975. Ch. 155, sec. 4, § 39–3–112, 1976 Colo. Sess. Laws 766, 766; ch. 366, sec. 2, § 39–3–112(1), (5), 1979 Colo. Sess. Laws 1407, 1407; ch. 367, sec. 1, § 39–3–112(4), 1979 Colo. Sess. Laws 1409, 1409.

In addition to the enactment of extensive legislative exemptions, both the Colorado and United States courts found portions of the statute unconstitutional. In *United States v. Colorado*, 460 F.Supp. 1184 (D.Colo.1978), *aff'd*, 627 F.2d 217 (10th Cir.1980), *aff'd sub nom.*, *Jefferson County v. United States*, 450 U.S. 901, 101 S.Ct. 1335, 67 L.Ed.2d 325 (1981), the United States District Court for Colorado found that the 1975 Possessory Interest Act, as applied to Rockwell International's management of the Rocky Flats facility, violated the Supremacy Clause of the

**23.** The United States Supreme Court has held that "[p]roperty interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules and understandings that stem from an independent source such as state law." *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

United States Constitution. Similarly, the Colorado Court of Appeals held the statute unconstitutional as applied to the Denver Federal Center cafeteria operator. *Southern Cafeteria, Inc. v. Prop. Tax Adm'r*, 677 P.2d 362, (Colo.App.1983). Both courts held that the statute unconstitutionally taxed the underlying federally owned property in addition to the lessee's possessory interest.

Finally, in 1995, this court held in *Mesa Verde III*, 898 P.2d 1, that the legislature could not exempt selected possessory interests once it chose to define possessory interests in federal property as taxable property. After *Mesa Verde III*, the General Assembly repealed the 1975 Possessory Interest Act and removed possessory interests from the classification of real property. § 39-3-136, 11 C.R.S. (2000). This action constituted a legitimate use of the legislative power to choose whether or not to impose a tax on a certain interest. *Ames,* 26 Colo. at 103, 56 P. at 663.

### B.

The General Assembly's present intent, as reflected in section 39-3-136, is to preclude the taxation of possessory interests in real property. The majority concludes that the statute is constitutionally infirm, because it conflicts with the broad statutory definition of real property and creates an impermissible exemption to the reach of that definition. For this position, the majority relies heavily on *Mesa Verde III*.

### i.

In *Mesa Verde III*, this court concluded that the possessory interests of the Mesa Verde Company were subject to real property taxation by Montezuma County under the law at the time: section 39-3-135(6). By that statute, the General Assembly had included possessory interests as taxable property. The legislation attempted to exempt the interests of a federal lessee or permittee from operation of that general inclusive scheme of taxation. We held that the exemption fell into none of the categories of exemptions authorized under the Colorado Constitution and was therefore unconstitutional.

We based our decision in *Mesa Verde III* on the *premise* that the legislature has the constitutional power to define real property as including possessory interests in federal lands, but once it decides to tax those interests, it cannot unconstitutionally exempt certain subsets of such property from taxation.

As the majority observes, subsection (16) depends for its meaning upon subsection (14), which defines "real property" as "all lands or interests in lands *to which title or the right to title has been acquired* from the government of the United States or from sovereign authority ratified by treaties entered into by the United States, or from the state." § 39-1-102(14)(a) (emphasis added). The majority reads the statute, by its reference to "interests in lands" to include possessory interests. In its analysis, the majority relies on language from *Mesa Verde III*. I disagree with that analysis, and further suggest that *Mesa Verde III* is not controlling precedent on this point because the case turned on construction of then-existing section 39-3-135(6), and referred to section 39-1-201 only as dicta.

In *Mesa Verde III*, this court found that the land in question fell under the definition of real property because, "like all federal land, title to this land was nevertheless acquired 'from sovereign authority ratified by treaties entered into by the United States, or from the states.'" *Mesa Verde III*, 898 P.2d at 5. I do not believe the legislature added the phrase "acquired from ... sovereign authority ratified by treaties entered into by the United States" for the purpose of including possessory interests in the definition of real property. Instead, in my view, the legislature added the language in subsection (14) to ensure that lands acquired by individuals from sources other than the United States, such as Mexico,[24] nevertheless constitute real property for taxation purposes. If,

---

24. The United States acquired the area of Colo- rado west of the Continental Divide from Mexico

as the majority suggests, the General Assembly added this phrase to include possessory interests in the definition of real property, it makes sense that the legislature would have included the statute outlining the taxation of possessory interests at that time as well. Instead, the General Assembly waited another eleven years before specifically taxing possessory interests.

In contrast to the majority's analysis, I would read the phrase "title or the right to title" to refer to and modify the taxpayer's interest, such that the taxpayer would be taxed only on lands in which he or she held title or a right to title. Even if the phrase "interests in lands" does not properly modify the taxpayer's interest, then real property is still limited to property in which someone has received title or a right to title from the government or a sovereign authority. Federal lands are titled to the United States, and therefore are not defined as real property for purposes of that statute.

Hence, in my view the significance the majority assigns to the reference to "lands or interests in lands" is outweighed by the clear import of the balance of the statutory definition. Consequently, I cannot join the majority's conclusion either that the simple definition of real property includes possessory interests, or that *Mesa Verde III* in any way turns on or mandates that interpretation of the statute.

ii.

Furthermore, to the extent *Mesa Verde III* does operate as precedent concerning the definition of real property, the General Assembly has overruled that construction. The General Assembly states not once, but twice, in section 39–3–136 that it does not intend to include possessory interests in its definition of real property. Section 39–3–136(1)(f) states that "[s]ubsection (2) of this section is intended to clearly state that possessory interests in exempt property shall be subject to

property taxation only upon enactment of specific statutory provisions directing such taxation." Additionally, subsection (2) states, "Possessory interests in real or personal property that is exempt from taxation under this article shall not be subject to property taxation unless specific statutory provisions have been enacted that direct the taxation of such possessory interests." § 39–3–136(2).

The legislature may overrule a court's statutory interpretation that does not deal with constitutional issues. *Montrose v. Pub. Util. Comm'n of Colo.*, 732 P.2d 1181, 1193 (1987); *see also Bayer v. Crested Butte Mtn. Resort*, 960 P.2d 70, 84 (Kourlis, J., dissenting). The General Assembly clearly passed section 39–3–136 with the intent to overrule our holding in *Mesa Verde III* dealing with the statutory definition of real property. Because the statutory definition of real property is not a constitutional issue, we must defer to the legislature's decision. I read the legislative intent as a clear desire not to include possessory interests in taxable property, part of the legislative prerogative, and not as a decision to exempt certain possessory interests from taxation, a constitutional issue.

In *Mesa Verde III* we relied on section 39–3–135(6) in our conclusion that the legislature intended the definition of "real property" in section 39–3–102(14) to include real property owned by the United States. 898 P.2d at 13. We stated:

> This interpretation is consistent with the statute read as a whole. In particular, section 39–3–135 applies to "any real property which is exempt from taxation for any reason." The provision refers to "real property owned by the United States," and imposes taxes on private interests in such property. These references imply that the legislature intended the definition of "real property" to include real property owned by the United States.

*Id.* at 13–14 (citations omitted). Similarly, in this case we should read the tax statute as a

as part of the treaty of Guadalupe Hidalgo. Benjamin Horace Hibbard, *A History of the Public*

*Land Policies* 21 (1939).

whole to reach the conclusion that the legislature no longer defines real property to include possessory interests in otherwise tax exempt property. Section 39–3–136 does not provide an unconstitutional exemption for possessory interests, instead it clarifies that the definition of real property no longer includes possessory interests.

Given the General Assembly's clear intent to refrain from including possessory interests from the definition of real property, I would follow the rule of statutory construction stating that a more specific statute controls over a general statute. § 2–4–205, 1 C.R.S. (2000). Section 2–4–205 states that if a general provision conflicts with a special or local provision, it shall be construed, if possible, so that effect is given to both. My interpretation of the statutes does just that. Read together, section 39–3–102(4) and section 39–3–136 remove possessory interests from the definition of real property.

### iii.

The majority relies upon the principle that exemptions from taxation must be constitutional and cannot be statutory. Without disputing that general principle, I am of the view that the legislative decision not to include possessory interests as real property for purposes of taxation was not an "exemption" requiring constitutional authorization.

First, as I have discussed, nothing in the constitution requires the legislature to include possessory interests in the definition of real property for taxation purposes. The constitution is silent on that point. Given that possessory interests are not automatically "real property" within the constitutional mandate, it is my view that a constitutional exemption is not necessary to remove them from the reach of taxation.

Therefore, we are dealing *not* with an exemption in the constitutional sense, but rather with a classification of property for taxation purposes. Clearly, the General Assembly has considerable latitude in defining and classifying real property. *Ames*, 26 Colo. at 103, 56 P. at 663.

For example, the constitution makes no mention of the taxation of mobile homes. Originally, mobile homes were taxed through an ownership tax. When mobile homes became more commonplace, the General Assembly determined that it wished to impose an ad valorem tax similar to that imposed on conventional housing. § 39–5–201 to 206, 11 C.R.S. (2000). Specifically, the General Assembly concluded that "mobile homes shall be subject to ad valorem taxation under the provisions of articles 1 to 9 of this title as if they were real property but shall be subject to the provisions of article 10 of this title concerning the collection of taxes as if they were personal property." § 39–5–202, 11 C.R.S. (2000).

The predecessor to that statute was the subject of a constitutional challenge, based on lack of complete uniformity in taxation of mobile homes and conventional homes. *Am. Mobilehome Ass'n*, 191 Colo. at 435, 553 P.2d at 760. This court upheld the statute, concluding that the General Assembly had the discretion to classify mobile homes as real property, and to establish a specific scheme of taxation, even if not identical to that applicable to conventional homes. *Id.* at 437, 553 P.2d at 761. "In taxation, even more than in other fields, the legislature has greater freedom to classify." *Id.* at 437, 553 P.2d at 762.

Similarly, it is within the legislative function and prerogative to define and classify possessory interests as real property, or not. *See Ames*, 26 Colo. at 103, 56 P. at 663. There is nothing in article X, section 3 of the constitution "imposing upon the General Assembly any restrictions or limitations so as to preclude it … from extending or enlarging the list of taxable subjects so as to embrace tangible and intangible things which might not be property under the broad definition of the word, and which might be the subjects of qualified ownership only." *Bd. of Comm'rs v. Rocky Mtn. News Printing Co.*, 15 Colo. App. 189, 196–97, 61 P. 494, 497 (1900).

It must then follow that the constitution does not preclude the General Assembly from narrowing the definition of real proper-

ty to exclude a classification from taxation. As long as the classification conceivably rests upon some reasonable considerations of difference or policy, the legislature does not violate the constitution. *Am. Mobilehome Ass'n*, 191 Colo. at 437, 553 P.2d at 762. Judicial interference with the classification is only justified when the legislature adopts the classification based upon an invidious and unreasonable distinction or difference with reference to similar kinds of property. *People ex rel. Iron Silver Mining Co. v. Henderson*, 12 Colo. 369, 375, 21 P. 144, 147 (1889).

### III.

The legislative decision to tax mineral interests and equity interests in state land, while simultaneously choosing not to tax possessory interests such as Vail's, is a permissible classification, based upon reasonable distinctions. I therefore disagree that those choices run afoul of constitutional uniformity requirements.

Neither an interest in a producing or even non-producing mining claim nor a contractual interest in state lands is truly possessory. Those interests reflect critical elements of ownership that differ markedly from a federal recreational lease, and that sustain any challenge based upon lack of uniformity of taxation. Even if they are characterized as possessory, the same attributes of ownership support a distinction in tax treatment between those interests and the possessory interests at issue in this case.

### A.

I begin with mines and minerals. Producing mines are taxed on the basis of the value of the production from the mine. § 39–6–106, 11 C.R.S. (2000). A producing mine is a mine whose gross proceeds during the preceding year exceeded $5,000. § 39–6–105, 11 C.R.S. (2000). The taxpayer is the owner or operator of the mine, and the tax arises out of the value of the asset produced from the mine. § 39–6–106. Title to the ore or hydrocarbon that serves as the basis to determine proceeds belongs to the lessee, not to the lessor. *Sec. Life*, 173 Colo. at 251, 477 P.2d at 371 (stating that title to the ore taken from producing mines on federal property remains with the lessee). Although the taxpayer is allowed to take royalty payments into account in determining gross and net value of production for tax purposes, any underlying lease is not itself a taxable asset.[25]

Non-producing unpatented mining claims are, as a matter of constitutional mandate, exempt from taxation as "possessory interest in real property by virtue of leases from the United States of America." Art. X, section 3(1)(b).

### B.

Similarly, oil and gas production is taxed to the owner or operator of a producing well. The County Assessor values the production based upon the selling price of the oil or gas extracted from the well during the preceding calendar year. § 39–7–102, 11 C.R.S. (2000). The lessee owner/operator's interest in the production is predicated upon the underlying lease, because without that lease, the lessee owner/operator would not be permitted to drill and extract a product.[26] However, the lease itself is *not* taxed.

As to nonproducing oil and gas leases, the owner/operator obviously bears no tax on

---

**25.** Assessors use the Assessor's Reference Library for purposes of assessing taxes. This court specifically found that the Assessor's Reference Library manuals bind the county assessors in the state. *See Huddleston v. Grand County Bd. of Equalization*, 913 P.2d 15, 18 (Colo.1996). I therefore look to that source for particularized information regarding the assessment of mines, minerals and oil and gas. *See* 3 Division of Property Taxation, Colorado Department of Local Affairs, *Assessor's Reference Library: Land*

*Valuation Manual*, at § 6.12 ff (1989, rev.vol. 1998).

**26.** In *Hagood v. Heckers*, 182 Colo. 337, 342, 513 P.2d 208, 211 (1973), this court determined that a reserved royalty interest, held by a lessee who had assigned the lease to an operator, was an interest in real property for purposes of state income taxation on the royalties received. The case stands for two propositions, neither of which bear upon the issue before the court to-

production. The tax that is assessed flows to the owner of the oil or gas interests. If the minerals and surface estate are severed, the mineral owner will owe a separate tax. If the minerals are leased, then that owner pays a tax based upon the rental he or she is receiving for the oil and gas lease. If no lease is outstanding, then the County Assessor calculates the tax based upon the average per acre annual rental of all mineral interests under lease in the county or area. § 39–7–109, 11 C.R.S. (2000).

### C.

Finally, I look to the tax treatment of equitable interests in state lands. Section 39–5–106, 11 C.R.S. (2000), provides that "[t]he equity in land purchased from the state under contract shall, during the term of such contract, be appraised and valued in the same manner as though held in fee by the purchaser, and any improvements on such land shall be appraised and valued in the same manner as other improvements." The Assessor's Reference Library provides that equities are to be valued at the percentage ownership of the purchaser as of the January 1 assessment date. *See* 3 Division of Property Taxation, Colorado Department of Local Affairs, *Assessor's Reference Library: Land Valuation Manual,* at § 7.1 (1989, rev.vol. 1998). Clearly then, the statute refers to a sale agreement consummated over a period of time, wherein the purchaser has the equivalent of ownership of the property while he or she is paying for it.

### D.

In short, I view all of those tax constructs as being completely consistent. None of

them tax a naked possessory interest, because, in addition to meeting the requirements stated in *Mesa Verde Co. v. Board of County Commissioners,* 178 Colo. 49, 57, 495 P.2d 229, 233 (1972) (*Mesa Verde I* ), the interests reflect some actual ownership in the property.[27]

The case of *Estes Park Toll Road Co. v. Edwards,* 3 Colo.App. 74, 77, 32 P. 549, 550 (1893), supports the same thesis. In that case, the court concluded that the county could tax the company's interest in the toll road precisely because the title to the right of way had vested permanently in the grantee. The court noted that the federal government had "granted" the right of way to the grantee, and "[p]ublic grant is the mode and act of creating a title in an individual to lands which had previously belonged to the government." *Id.* The passing of title to the easement triggered susceptibility to taxation not mere possession. In each of these situations the state imposed a property tax on individuals with a real interest in the property taxed, not just a possessory interest.

If the term "possessory interest" loosely includes a producing oil and gas well, producing mine or contract for purchase of state land, then the distinctions that the General Assembly chooses to make by including those interests while excluding other interests from taxation is rationally related to a legitimate distinction. When construing a statute, we presume it to be constitutional. *People v. Janousek,* 871 P.2d 1189, 1195 (Colo.1994). Additionally, the party challenging the constitutionality of a statute must prove the statute's unconstitutionality beyond a reasonable doubt. *Id.* The uniformity of taxation

---

day: 1) That state law controls state income tax issues even as to a federal lease; 2) That a reserved royalty interest is an ownership interest for purposes of income taxation. I note that a reserved royalty interest is generally held by the owner/lessor of the property, although it can arise out of an assignment or other intervening transaction. In neither event is it a possessory interest.

27. There is a broader argument that ownership of property for tax purposes can only be defined with reference not only to the right to use and possess, but also the right to alienate or transfer.

*See Ames,* 26 Colo. at 107, 56 P. at 664 (allowing the General Assembly to identify classes of property for taxation (or exemption therefrom) "so long as the discrimination is based upon the nature or use of property, justifying it, there is nothing to forbid the legislative classification for taxation of all species of property [except those properties expressly mentioned in the constitution], or to prevent the fixing of the valuation of the different classes by different methods"); *Rocky Mountain News Printing Co.,* 15 Colo.App. at 194–95, 61 P. at 496.

clause as well as other general constitutional mandates require the General Assembly to classify real property in a reasonable and logical way, such that property belonging in a given classification receives equal treatment to other property in the same class. *Dist. 50 Metro. Recreation Dist. v. Burnside,* 167 Colo. 425, 430, 448 P.2d 788, 790 (1968). In my view, the possessory interests that the General Assembly seeks to exempt from taxation are not in the same class of property as the other interests discussed, and thus, can logically be treated differently.

Accordingly, I cannot join the majority's conclusion that sections 39–3–136 and 39–1–106 unconstitutionally exempt private possessory interests from taxation because those statutes prohibit the taxation of some possessory interests while continuing the taxation of others.

### IV.

In summary, I find nothing in the Colorado Constitution or the statutes that conflicts with or prohibits the General Assembly from choosing not to tax possessory interests.[28] I further do not view *Mesa Verde III* as standing for any proposition that interferes with that conclusion. Hence, I return to the place where I began: namely, that the authority to define real property is firmly vested in the General Assembly.

Because of the breadth of that authority, it is my conclusion that in enacting section 39–3–136 the General Assembly properly exercised its authority to define categories of property subject to taxation and effectively removed possessory interests from the definition of real property.

Accordingly, I respectfully dissent from the majority's conclusion that sections 39–3–136 and 39–1–106 are unconstitutional and would affirm the court of appeals.

I am authorized to state that Justice RICE and Justice COATS join in this dissent.

---

**28.** I would also observe that any other state that has imposed tax on possessory interests does so by means of express, not implicit, statutory or constitutional authority. *See* Mont. Const. art. VIII, § 5; Cal. Rev. & Tax Code § 107 (Deering 2000).