Ronald **SOUTHARD, Arkansas Valley Aviation, Petitioners–Appellants,**

v.

**BOARD OF EQUALIZATION, CHAFFEE COUNTY, Respondent–Appellee,**

and

**Colorado State Board of Assessment Appeals, Appellee.**

No. 98CA1295.

Colorado Court of Appeals, Div. IV.

July 8, 1999.

Rehearing Denied Aug. 26, 1999.

Certiorari Denied April 10, 2000.

John M. Cogswell Law Office, John M. Cogswell, Michael J. Heaphy, Buena Vista, Colorado, for Petitioners–Appellants.

Chaffee County Attorney's Office, Ken Baker, County Attorney, Salida, Colorado, for Respondent–Appellee.

No Appearance for Appellee Board of Assessment Appeals.

Opinion by Judge RULAND.

Petitioners, Ronald Southard and Arkansas Valley Aviation, Inc., appeal from the order of the Board of Assessment Appeals (BAA) denying their protests to the 1997 general property tax approved by respondent, Chaffee County Board of Equalization. We affirm.

In 1985, petitioners' predecessor entered into a lease with the Town of Buena Vista for a parcel of land on which an airport was to be constructed. The initial term of the lease was 28 years.

Pursuant to the lease, the tenant was granted exclusive use of the airport and was obligated to construct certain improvements for use in connection with operation of that facility. As pertinent here, these improvements presently consist of a building containing a terminal, office space, and other facilities and a separate building containing a number of airplane hangers.

As rental, the tenant was obligated to pay $100 per month to the town as well as five cents a gallon for each gallon of airplane fuel sold. The tenant also agreed to maintain the improvements in good repair. Finally, as pertinent here, the tenant agreed to pay all general property taxes imposed by the county.

The tenant was authorized by the lease to mortgage or encumber the improvements constructed by it. Further, upon termination of the lease by expiration of time or otherwise, the town agreed to pay cash to the tenant for "the fair market value as of that date" for all improvements constructed by the tenant.

Initially, no taxes were levied by the county against the improvements apparently based on the assumption that the improvements were owned by the town. However, in 1992, the assessor concluded that the improvements were owned by the tenant. Accordingly, general property taxes were imposed.

The dispute between the parties resulted in litigation in the district court which was ultimately resolved by settlement for the tax years up through 1996. The case before the BAA that is the subject of this appeal involved the 1997 tax year.

The BAA determined that petitioners had failed to demonstrate that the taxes imposed by the county were based upon an incorrect valuation. To the extent that petitioners asserted that the improvements were exempt, the BAA concluded otherwise based upon the provisions of Colo. Sess. Laws 1989, ch. 325, § 39–3–135(1) at 1480, which, until 1996, provided:

(1) Except as otherwise provided in this section, when any real property which is exempt from taxation for any reason is leased ... by a private individual ... the lessee ... shall be subject to taxation in the same amount and to the same extent as though the lessee or user were the owner of such property.

To the extent that petitioners relied upon § 39–3–136, C.R.S.1998, as support for their position, the BAA concluded that the statute did not apply. This statute provides:

(1) The general assembly hereby finds and declares that:

(a) Section 3 of article X of the state constitution does not require the taxation of possessory interests, which are rights to use property that do not constitute the substantial equivalent of complete ownership of the property, in land, improvements, and personal property that are

otherwise exempt from property taxation, absent express statutory authorization. . . .

## I.

Petitioners contend and we agree that the BAA's reliance upon § 39-3-135(1) was incorrect. That statute was repealed in 1996. Colo. Sess. Laws 1996, ch. 297 at 1851.

## II.

In response to the holding in *Mesa Verde Co. v. Board of Equalization,* 898 P.2d 1 (Colo.1995), the General Assembly declared in § 39-3-136 that, absent statutory authorization, "possessory interests" in exempt real estate were not taxable. Because the land leased from the town is exempt from taxation, petitioners contend that the BAA erred in concluding that their interest in the improvements was not also exempt as a possessory interest.

In support of this contention and relying upon *Denver v. Board of Assessment Appeals,* 848 P.2d 355 (Colo.1993), petitioners argue that their interest in the improvements cannot be separated artificially from the unit of real property of which the improvements are a part. In this regard, petitioners note that "real property" is defined for tax purposes in § 39-1-102(14), C.R.S.1998, as "all lands or interest in lands" and "improvements." We are not persuaded by petitioners' contention.

■ In *Denver v. Board of Assessment Appeals,* our supreme court adopted the "unit assessment rule" which requires that all estates in a unit of real property be assessed together. The purpose of the rule is to avoid multiple assessments upon different ownerships in the same real estate, thus avoiding the potential for inconsistency. However, that opinion does not address the situation in this case in which one part of the real property is exempt (the land) and another may not be (the improvements). Hence, we do not view the analysis in that case as applicable.

■ Further, to the extent that petitioners rely upon the statutory definitions of real property and improvements contained in § 39-1-102, C.R.S.1998, another division of this court has recently held in *Vail Associates, Inc. v. Eagle County Board of County Commissioners,* 983 P.2d 49 (Colo.App.1998), that these definitions have been modified by § 39-3-136, as to exempt property. We adhere to that view.

■ As a result, we conclude that resolution of the issue in this case turns on the General Assembly's definition and application of the term "possessory interests" contained in § 39-3-136. Specifically, the term describes rights to use property "that do not constitute the substantial equivalent of complete ownership of the property." And, we further conclude that the lease grants the tenant in this case rights that are the equivalent of complete ownership of the improvements.

First, we note that it is not uncommon for a tenant to retain for all practical purposes the ownership of the improvements constructed pursuant to a lease. *See Andrews v. Williams,* 115 Colo. 478, 173 P.2d 882 (1946). *See also In re Costar Marine Tax Assessment Appeal,* 33 Pa. Commw. 447, 382 A.2d 156 (1978); *Washington Mutual Savings Bank v. Department of Revenue,* 77 Wash. App. 669, 893 P.2d 654 (1995).

Here, for example, the lease refers to the obligation of the tenant, among other things, to maintain "its building." Further, the tenant has the exclusive right to use the improvements consistent with the purposes of the lease for an extended term and to retain all income generated by that use. Indeed, the tenant claims that its interest in the improvements is that of legal ownership.

Further, the lease authorizes the tenant to encumber the improvements thus creating the potential for transfer of the improvements to a lender of the tenant via foreclosure. And, while the lease limits the use to that associated with an airport, we do not view that limitation on ownership rights as more restrictive than those placed by zoning regulations in a zone set aside for single family residences only.

Most important and in addition to the foregoing, the tenant is entitled to the cash market value of the improvements upon termi-

nation of the lease. *See Mesa Verde Co. v. Board of County Commissioners,* 178 Colo. 49, 495 P.2d 229 (1972)(interpreting and applying the concept of possessory rights that are tantamount to ownership under former statute).

Accordingly, we conclude that the BAA did not err in determining that the improvements were properly assessed to the tenant as having the substantial equivalent of complete ownership for general property tax purposes. In reaching this conclusion, we recognize that the town has attempted to disavow its written repurchase obligation in the lease as legally invalid. However, understandably, petitioners do not necessarily concede the validity of the town's position, and hence, we do not do so for purposes of this opinion.

### III.

Petitioners finally contend that the BAA erred in failing to consider and apply the income method in valuing their interests as required by § 39–1–103(5)(a), C.R.S.1998. Further, they contend that only the income approach to valuation was appropriate under the circumstances and that the cost method of valuation applied by the assessor was incorrect. We find no error in the BAA's decision.

This was an issue of fact for resolution by the BAA. In rejecting the income approach to valuation, the BAA recognized and credited testimony from the county that there was insufficient data available to support an income analysis. Indeed, petitioners' expert testified that she lacked the requisite information to make such an evaluation.

Because there is record support for the BAA's decision that the income approach could not be applied under the circumstances, we may not reverse that determination on appeal. *See Board of Assessment Appeals v. Colorado Arlberg Club,* 762 P.2d 146 (Colo.1988).

Order affirmed.

Judge BRIGGS and Judge KAPELKE concur.