The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division.  Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
August 29, 2019

## 2019COA134

**No. 18CA0535, *Rare Air Ltd. v. Prop. Tax Adm'r* — Taxation — Property Tax — Improvements**

A division of the court of appeals considers whether an improvement located on tax exempt land is subject to property tax when the underlying land is government-owned land that is leased from a private party that holds a possessory interest in the land.  The division concludes that tax assessments on improvements are properly made even against mere lessees when the lessee is, for all practical purposes, the owner of the improvements.  This is so where a lessee's possessory interest in the land includes rights such as exclusive use, the right to encumber, and the retention of all income generated, because such an interest constitutes the

substantial equivalent of complete ownership for property tax purposes.

The division therefore concludes that the Board of Assessment Appeals (BAA) correctly determined that Rare Air Limited, LLC (Rare Air), possesses a taxable ownership interest in the hangar facility. And, absent a lawful exemption, such an interest is properly assessed taxes on that interest.  In so concluding, the division rejects Rare Air's contention that because its interest in the improvement should be assessed as a possessory interest, such assessment is barred by section 39-1-103(17), C.R.S. 2018.  The division further concludes that, in the absence of multiple taxpayers with interests in a single property, the unit rule established by section 39-1-106, C.R.S. 2018, has no application.

Accordingly, the division affirms the BAA's order upholding the 2015 tax assessment on Rare Air's property.

COLORADO COURT OF APPEALS                                    **2019COA134**

---

Court of Appeals No. 18CA0535
Board of Assessment Appeals Case No. 69880

---

Rare Air Limited, LLC,

Petitioner-Appellant,

v.

Property Tax Administrator,

Respondent-Appellee,

and

Board of Assessment Appeals,

Appellee.

---

ORDER AFFIRMED

Division II
Opinion by JUDGE TERRY
Pawar and Márquez*, JJ., concur

Prior Opinion Announced July 18, 2019, <u>WITHDRAWN</u>

OPINION PREVIOUSLY ANNOUNCED AS "NOT PUBLISHED PURSUANT TO
C.A.R. 35(e)" ON JULY 18, 2019, IS NOW DESIGNATED FOR PUBLICATION

Announced August 29, 2019

---

Kutak Rock LLP, Kenneth K. Skogg, Dana B. Baggs, Denver, Colorado, for
Petitioner-Appellant

Philip J. Weiser, Attorney General, Robert H. Dodd, First Assistant Attorney General, Allison Robinette, Assistant Attorney General, Denver, Colorado, for Respondent-Appellee

Philip J. Weiser, Attorney General, Evan P. Brennan, Assistant Attorney General, Denver, Colorado, for Appellee

Kristin M. Bronson, City Attorney, Charles Solomon, Assistant City Attorney, Noah Cecil, Assistant City Attorney, Denver, Colorado, for Amicus Curiae City and County of Denver

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2018.

¶ 1     In this property tax case, taxpayer, Rare Air Limited, LLC (Rare Air), appeals the order of the Board of Assessment Appeals (BAA) upholding the 2015 tax assessment on its property.  We affirm.

## I.     Background

¶ 2     This appeal arises out of a dispute over a property tax assessment made on an aircraft hangar facility located at Centennial Airport.

¶ 3     Centennial Airport, located in Arapahoe and Douglas Counties, Colorado, is owned by the Arapahoe County Airport Authority (Authority), which is tax-exempt as a political subdivision of the State of Colorado.  The Authority holds title to land in Arapahoe and Douglas Counties.

¶ 4     In 2006, the Authority leased approximately seventy acres of airport land in Douglas County, at a rate of five cents per square foot, to Denver jetCenter (DJC) pursuant to a Master Lease.  The initial term of the Master Lease is forty years with optional extensions of another fifty years.

¶ 5     Under the terms of the Master Lease, DJC is required to construct, or contract for the construction of, certain improvements

1

on the leased land. Those improvements include an aircraft hangar facility to provide specified aviation-related services. The Master Lease further provides that DJC may enter into a sublease, with the Authority's approval, to provide some of the required improvements and services.

¶ 6 DJC entered into a sublease (Ground Lease) in 2011 with Rare Air to satisfy its obligation to construct the hangar facility. The Ground Lease covers about three acres out of the seventy acres DJC leases from the Authority under the Master Lease. The Ground Lease includes only land, requires rent payments of thirty-five cents per square foot, and has a base term of twenty-five years with an option to extend for an additional five years. If the lease is extended the rent will be adjusted to include the land and any improvements.

¶ 7 The Ground Lease obligates Rare Air to construct improvements consisting of a building containing an aircraft hangar, storage, and office space with a minimum area of 25,000 square feet. The Ground Lease provides that Rare Air will be deemed to own, and will hold title to, all improvements made by Rare Air, until the expiration of the lease, at which time title will

vest in DJC.  If the lease is extended, title to the improvements will then vest in DJC.

¶ 8     Constructed in 2012 at a cost of approximately $2.4 million, the hangar facility consists of 30,000 square feet of hangar space and 9900 square feet of office and support space.  The hangar can accommodate five jet aircraft, and contains office space, meeting rooms, a lounge, a kitchen, and interior automobile parking.  The hangar facility is located on tax-exempt land owned by the Authority.

¶ 9     Rare Air has the exclusive right to possess, use, operate, and receive revenues from the hangar facility and owns and holds title to all improvements it constructs on the leased land, including the hangar facility.  Rare Air further has the rights to all depreciation and tax advantages, to assign or transfer the improvements with proper authorization, and to encumber the improvements.  It also has the duty to obtain insurance and maintain any improvements at its own expense.

¶ 10    For tax year 2015, the Douglas County Assessor's Office issued a notice of valuation to Rare Air for the value of the hangar facility of $2,871,708.00.  The value of the hangar has not been

disputed by the parties. Claiming that the hangar facility should be assessed to DJC's leasehold interest in the seventy acres of land under the Master Lease, Rare Air sought and obtained from Douglas County an abatement for the tax assessment.

¶ 11 But due to the size of the abatement, review by the Property Tax Administrator was required. The Tax Administrator overruled the abatement, stating that "all property, real and personal, located in the State of Colorado on the assessment date . . . is taxable unless expressly exempted by the Constitution or state statutes."

¶ 12 Rare Air appealed the Tax Administrator's decision to the BAA, which upheld the decision of the Tax Administrator, determining that Rare Air had been correctly assessed for its interest in the hangar.

## II. Analysis

¶ 13 Rare Air contends that the BAA erred in upholding the tax assessment on improvements — the hangar facility — because (1) DJC — not Rare Air — holds a taxable interest in the hangar facility; (2) the assessment violates the statute governing taxation of possessory interests; and (3) the assessment violates the unit assessment rule. We disagree with each of these contentions.

4

## A. Standard of Review and Applicable Law

¶ 14    Review of the BAA's decision presents a mixed question of law and fact. *Farny v. Bd. of Equalization*, 985 P.2d 106, 109 (Colo. App. 1999). It is the function of the BAA to weigh the evidence, make credibility determinations, and resolve any factual conflicts. *Bd. of Assessment Appeals v. Sampson*, 105 P.3d 198, 208 (Colo. 2005). We therefore defer to the BAA's factual findings and will not disturb them unless they are clearly erroneous, meaning they are unsupported by the record. *Id.*

¶ 15    Questions of law, including the meaning and scope of property tax statutes, are reviewed de novo. *Boulder Cty. Bd. of Comm'rs v. HealthSouth Corp.*, 246 P.3d 948, 951 (Colo. 2011). Whether the BAA's decision comports with the statutory scheme is a legal question that we review de novo. *Lobato v. Indus. Claim Appeals Office*, 105 P.3d 220, 223-24 (Colo. 2005).

¶ 16    Judicial deference to an agency's interpretation of a statute "is appropriate when the statute before the court is subject to different reasonable interpretations and the issue comes within the administrative agency's special expertise." *Huddleston v. Grand Cty. Bd. of Equalization*, 913 P.2d 15, 17 (Colo. 1996). Even so, we

5

are not bound by an agency decision that misapplies or misconstrues the law. *El Paso Cty. Bd. of Equalization v. Craddock*, 850 P.2d 702, 704-05 (Colo. 1993).

### B. Discussion

#### 1. Property Taxation of Improvements

¶ 17    Rare Air contends that it does not have a taxable interest in the hangar facility. We disagree.

¶ 18    "The Colorado Constitution directs that all real and personal property, as defined by the legislature, must be taxed unless it is exempted in accordance with law." *Bd. of Cty. Comm'rs v. Vail Assocs., Inc.*, 19 P.3d 1263, 1275 (Colo. 2001) (relying on Colo. Const. art. X, § 3(1)(a)). As a result, no affirmative tax provision needs to be enacted for real and personal property to be taxed. But exemptions from taxation must be expressly enacted into law. *See* § 39-1-102(16), C.R.S. 2018 (defining "[t]axable property" as "all property, real and personal, not expressly exempted from taxation by law"). "Real property" is defined to specifically include "[i]mprovements." § 39-1-102(14)(c).

¶ 19    Improvements are statutorily defined as "all structures, buildings, fixtures, fences, and water rights erected upon or affixed

6

to land, whether or not title to such land has been acquired." § 39-1-102(6.3).  Accordingly, buildings and structures are improvements subject to taxation as real property unless exempted.

¶ 20     Rare Air constructed the hangar facility at its own expense. The Ground Lease vests in Rare Air significant benefits of ownership in the hangar facility, including exclusive use of the facility, the right to all depreciation and tax advantages, retention of all profits generated, and the rights to encumber the improvements and assign or transfer them with proper authorization.  Rare Air also bears the burdens of ownership, including duties to maintain the facility at its own expense, pay any assessed taxes pursuant to the terms of the Ground Lease, and insure the facility at its own expense.  There is no evidence in the record that any other person or entity possessed those benefits or burdens of ownership in the hangar facility in tax year 2015.

¶ 21     Importantly, Rare Air holds title to the hangar facility.  This fact alone is often determinative in identifying who should be taxed as the property owner.  *Hinsdale Cty. Bd. of Equalization v. HDH P'ship*, 2019 CO 22, ¶¶ 26-38 (identifying some of the narrow circumstances that justify looking beyond record title to determine

who is the "owner" for tax purposes). And while title to that facility may vest in DJC upon the expiration of the Ground Lease, there is no evidence in the record that any other person or entity held title to the hangar facility in tax year 2015. (The Ground Lease is not set to expire until 2036, at the earliest.)

¶ 22    Even if Rare Air did not hold title to the hangar facility, though, tax assessments on improvements are properly made even against mere lessees when the lessee is, for all practical purposes, the owner of the improvements. In this regard we are persuaded by the analysis in *Southard v. Board of Equalization*, 996 P.2d 208 (Colo. App. 1999). There, a taxpayer leased airport land for a term of twenty-eight years and constructed a terminal and aircraft hangars pursuant to the lease but did not hold title to the improvements. Nonetheless, a division of this court affirmed the property tax assessment against the lessee, as the *owner* of the improvements, because the lessee's rights, including exclusive use, the right to encumber, and the retention of all income generated, constituted the substantial equivalent of complete ownership for property tax purposes. *Id.* at 210-11.

8

¶ 23 The BAA correctly determined that Rare Air possesses a taxable ownership interest in the hangar facility. And the owner of such an interest is properly assessed taxes on that interest, absent a lawful exemption. *See HDH P'ship*, ¶ 36 (noting the approach of "imputing tax liability to all interests in real property, unless lawfully exempted"); *see also* § 39-1-111(1), C.R.S. 2018 (all taxable property located in each county on the assessment date is subject to taxation); *City & Cty. of Denver v. Bd. of Assessment Appeals*, 848 P.2d 355, 360 (Colo. 1993) ("'[O]wner' of property is responsible for property taxes regardless of how various property rights may have been pledged or exchanged."). Thus, we conclude that Rare Air was properly assessed for its ownership interest in the hangar facility, which is an improvement constituting a taxable interest in real property.

2. Section 39-1-103(17) and Taxation of Possessory Interests

¶ 24 Rare Air further contends that section 39-1-103(17), C.R.S. 2018, is the sole authority for assessing taxes on possessory interests and that the assessment on Rare Air is not within the statutory grant of authorization for taxation of possessory interests. As set forth above, we view Rare Air's ownership interest in the

9

hangar facility to be that of direct ownership of improvements taxable as real property. However, assuming, without deciding, that Rare Air's interest in the hangar facility should be assessed as a possessory interest, we still reject Rare Air's contention that any such assessment is barred by statute.

¶ 25    A possessory interest is "[t]he present right to control property, including the right to exclude others, by a person who is not necessarily the owner." Black's Law Dictionary 1353 (10th ed. 2014). A possessory interest in public property is a "private property interest in government-owned property or the right to the occupancy and use of any benefit in government-owned property that has been granted under lease, permit, license, concession, contract, or other agreement." 3 Div. of Prop. Taxation, Dep't of Local Affairs, Assessors Reference Library 7.69 (rev. Apr. 2019). A possessory interest in tax-exempt property is taxable if it "exhibit[s] significant incidents of private ownership that distinguish it from the underlying tax-exempt ownership." *Vail Assocs.*, 19 P.3d at 1279.

¶ 26    Contrary to Rare Air's contention, section 39-1-103(17) does not provide the *authority for* taxation of possessory interests nor

does it dictate whether an interest is taxable or not. No special authorization by the legislature is required to tax possessory interests because they are, in and of themselves, real property interests subject to taxation unless exempted. *See* § 39-1-102(16) (defining "[t]axable property" as "all property, real and personal, not expressly exempted from taxation by law"); *Vail Assocs.*, 19 P.3d at 1275; *see also* § 39-1-107(4), C.R.S. 2018 (property tax on possessory interest assessed and collected in the same manner as property taxes assessed to owners of real or personal property).

¶ 27      Furthermore, section 39-1-103(17), by its very terms, addresses the *valuation* of taxable possessory interests. The title of section 39-1-103 is "Actual value determined – when." And the statute provides, in pertinent part, that "[t]he general assembly declares that the valuation of possessory interests in exempt properties is uncertain and highly speculative and that the following specific standards for the appropriate consideration of the cost approach, the market approach, and the income approach . . . must be . . . applied in the valuation of possessory interests . . . ." § 39-1-103(17)(a).

11

¶ 28    Accordingly, we conclude that even if Rare Air's interest in the hangar should have been assessed as a possessory interest, such an assessment would not be prohibited by section 39-1-103(17).

### 3.    Unit Assessment Rule

¶ 29    Rare Air contends that the unit assessment rule applies and that application of the rule requires any assessment on the hangar facility to be made to DJC.  We conclude, as did the BAA, that the unit assessment rule does not apply.

¶ 30    The unit assessment rule is established by section 39-1-106, C.R.S. 2018, which provides, as pertinent here, "it shall make no difference that the use, possession, or ownership of any taxable property is qualified, limited, not the subject of alienation, or the subject of levy or distraint separately from the particular tax derivable therefrom."  *City & Cty. of Denver*, 848 P.2d at 359.  The unit assessment rule "requires that all estates in a unit of real property be assessed together, and the real estate as an entirety be assessed to the owner of the fee 'free of the ownerships of lesser estates such as leasehold interests.'"  *Id.* at 358 (citation omitted).

¶ 31    The rule "typically operates to tax land and improvements together, without the additional separate taxation of lesser interests

12

therein, such as leaseholds, because taxation of the whole is presumed to include taxation of the derivative parts." *Vail Assocs.*, 19 P.3d at 1278. Where, as here, the landowner is tax exempt, the rule operates to assess one tax on the various subordinate private possessory interests, such as leasehold interests. *Id.* at 1279. However, the unit assessment rule has no application when separate and distinct interests in the property exist or have been created. *Vill. at Treehouse, Inc. v Prop. Tax Adm'r*, 2014 COA 6, ¶¶ 32-33.

¶ 32 Rare Air states that the unit assessment rule prohibits "multiple assessments on multiple taxpayers holding different interests in a single property." Be that as it may, as the BAA found, the particular tax assessment contested here covers a single property interest: Rare Air's ownership of the hangar facility. And the record contains no evidence that DJC, or any other taxpayer, had an ownership interest in the hangar facility in 2015.

¶ 33 The BAA concluded that DJC "did not construct and does not own the improvements located on the subleased land" and therefore "has no ownership interest in the improvements." As a result, the

BAA correctly found that the tax on the hangar facility must be assessed to Rare Air.

¶ 34    Rare Air, in contrast to DJC, possesses significant incidents of ownership in the hangar facility, including the exclusive use of the hangar, the right to all depreciation and tax advantages, the retention of all profits generated, the right to encumber the improvements, and the right to assign or transfer the improvements with proper authorization.  But most importantly, Rare Air holds actual title to the facility.  It makes no difference that DJC might acquire the hangar if Rare Air defaults on the lease.  Given the high value of the hangar in comparison with the leasehold, it is highly speculative that Rare Air would allow such a default to occur.

¶ 35    In the absence of multiple taxpayers with interests in a single property — the hangar facility — the unit assessment rule has no application.

### III.    Conclusion

¶ 36    We conclude that Rare Air was properly assessed for its ownership interest in the hangar, which constitutes a taxable interest in real property.  The BAA's order is affirmed.

JUDGE PAWAR and JUDGE MÁRQUEZ concur.

14