25CA0219 Sheltair v Jefferson County 03-19-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0219
Jefferson County District Court No. 23CV31597
Honorable Christopher Zenisek, Judge

Sheltair Denver, LLC,

Plaintiff-Appellant and Cross-Appellee,

v.

Jefferson County Board of Equalization and Scot Kersgaard, in his official
capacity as the Jefferson County Assessor,

Defendants-Appellees and Cross-Appellants.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE PAWAR
Johnson and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 19, 2026

Larry D. Harvey, P.C., Larry D. Harvey, Sara A. Zalkin, Denver, Colorado, for
Plaintiff-Appellant and Cross-Appellee

Kimberly Sorrells, County Attorney, Amber J. Munck, Assistant County
Attorney, Ben Longnecker, Assistant County Attorney, Golden, Colorado, for
Defendants-Appellees and Cross-Appellants

¶ 1    This is a property tax dispute about the assessment of Sheltair Denver LLC's (Sheltair) interest in land and buildings at a county-owned airport.  We affirm the district court's denial of Jefferson County's (the County) motion for directed verdict.  And we reverse the court's judgment upholding the assessment because we conclude that the assessor used incorrect standards when valuing Sheltair's interest.  We therefore remand the case for a new assessment.

## I.    Background

¶ 2    Rocky Mountain Metropolitan Airport is owned by the County, which is a tax-exempt government entity.  In 2018, Sheltair leased land at the airport from the County.  The terms of the lease required Sheltair to construct, at its expense, several buildings and structures on the leased land.  The lease referred to the leased property as the "Premises" and the buildings and structures Sheltair was required to build as "Improvements."  The lease said in

multiple places that the Improvements, once constructed, become part of the leased property.[1]

¶ 3    The lease also provided that at the end of the lease term, "title to the Premises and Improvements shall, at the option of the County, vest in the County."  The parties do not dispute that at the end of the lease term, regardless of whether the County elects to take title to the buildings and structures Sheltair constructed, Sheltair will not receive any compensation for them.

¶ 4    By 2023, Sheltair had constructed the following Improvements: a terminal, two hangars, roads, and a fuel storage farm.  For that tax year, the County sent Sheltair two separate notices of valuation for two purportedly separate properties.  One was for Sheltair's possessory interest in all the land Sheltair leased at the airport, *including* the land underneath the Improvements.  The other was for Sheltair's purported ownership of the Improvements themselves, *not including* the land underneath them.

---

[1] "The County leases to [Sheltair] and [Sheltair] leases from the County, the real property, including . . . any Improvements . . . ." "Any Improvements erected or constructed on the Premises shall be permanently and inseparably attached to the Premises . . . ."

¶ 5    Sheltair protested both valuations to the assessor, and the assessor upheld the Improvement-only valuation and reduced the land-only valuation.  Sheltair appealed to the Jefferson County Board of Equalization, which denied the appeal.

¶ 6    Sheltair then appealed both assessments to the district court, which held a bench trial.  Before the district court, Sheltair argued that (1) it was improper to separate Sheltair's property interests at the airport into two separate interests; (2) it held the same possessory interest in both the land and Improvements on the land at the airport; and (3) the value of its possessory interest in the Improvements had been assessed incorrectly.

¶ 7    During the trial, the County moved for a directed verdict on the ground that Sheltair owned the Improvements.  The district court denied this motion, ruling that it was not clear whether Sheltair owned the Improvements.  Then, acting as the fact finder, the court concluded that issuing two separate assessments was proper and rejected Sheltair's challenge to the methodology used to value its interest in the Improvements.

¶ 8    Sheltair appeals and the County cross-appeals.  Sheltair argues that the district court erred by condoning the two separate

assessments and upholding the valuations. The County argues that the court erred by denying its directed verdict motion.

¶ 9    We address the County's challenge to the directed verdict motion first and conclude that the court properly denied that motion. We then agree with Sheltair's appeal that the unit assessment rule required a single assessment of Sheltair's single possessory interest in the leased land plus the Improvements on that land.

## II.    Directed Verdict Motion: Ownership of the Improvements

### A.    Although the Court Issued Two Rulings on Whether Sheltair Owned the Improvements, Only One is at Issue Here

¶ 10    As we understand it, the parties agree that Sheltair had a possessory interest in the leased land. They disagree, however, about whether Sheltair had the same possessory interest in the Improvements or instead owned them. The district court addressed this disagreement in two separate rulings. We explain our understanding of those two rulings to make clear what is and is not at issue in this appeal.

¶ 11    The court first addressed the nature of Sheltair's interest in the Improvements when ruling on the County's directed verdict

motion. The court declined to hold that Sheltair owned the Improvements as a matter of law and therefore denied the directed verdict motion.

¶ 12    The court also addressed the nature of Sheltair's interest in the Improvements in its judgment resolving Sheltair's appeal from the Board of Equalization. The court delivered this judgment in a lengthy oral ruling, which the court memorialized in a single-sentence written order. Understanding where the court landed on the nature of Sheltair's interest in the Improvements requires some parsing.

¶ 13    In its oral ruling, the court applied the test from *Board of County Commissioners v. Vail Associates, Inc.*, 19 P.3d 1263 (Colo. 2001). This test is applied to determine whether a private party that holds a possessory interest in tax-exempt property owned by another can be taxed on that possessory interest. *Id.* at 1278-79. Such a possessory interest is taxable if it exhibits "significant incidents of ownership." *Id.* at 1279 (citation omitted). The district court ruled that the *Vail Associates* test was satisfied, thereby rendering Sheltair's *possessory interest* in the Improvements

taxable.  Indeed, the court referred to Sheltair's "possessory interest in these structures" (i.e., the Improvements).

¶ 14    However, in both the oral and written rulings, the court referred to Sheltair's interest in the Improvements as the "substantial equivalence of ownership."  And a possessory interest is defined as a right to use property that is "*less than* the substantial equivalent of complete ownership."  *Cantina Grill, JV v. City & Cnty. of Denv. Bd. of Equalization*, 2012 COA 154, ¶ 7 (emphasis added), *aff'd on other grounds*, 2015 CO 15.  The court's repeated substantive conclusion that Sheltair's interest in the Improvements was possessory is incompatible with its reference to the nature of that interest as the "substantial equivalence of ownership."  We square this circle by presuming that the court simply conflated two similar sounding phrases but never strayed from its conclusion that Sheltair's interest in the Improvements was a possessory interest.

¶ 15    Recall that the crux of the *Vail Associates* test is whether a possessory interest exhibits "significant incidents of ownership."  *Vail Assocs.*, 19 P.3d at 1278-79 (citation omitted).  In ruling that this test was satisfied here, the court said, "[T]here is, indeed, the

*substantial equivalence of ownership* required in *Vail* [*Associates*] to provide a taxed value of the [I]mprovements." (Emphasis added.) The court's single-sentence written order repeated this phraseology, saying that Sheltair's interest in the Improvements was the "substantial equivalence of ownership."

¶ 16    We believe the court meant to say, in both the oral and written rulings, that Sheltair's possessory interest in the Improvements exhibited significant incidents of ownership (not that its interest was the substantial equivalence of ownership), thus rendering that interest taxable. Indeed, this is consistent with the court's repeated characterization of Sheltair's interest as possessory, the County's colloquy with the court after the oral ruling in which both agreed that Sheltair should be taxed on its possessory interest in the Improvements, and the parties' understanding of the court's ruling during appellate oral argument.

¶ 17    In sum, we understand the district court to have made two separate rulings on the nature of Sheltair's interest in the Improvements. First, it declined the County's invitation to rule as a matter of law, pursuant to the directed verdict motion, that Sheltair owned the Improvements. Second, acting as the fact finder, the

court concluded that Sheltair had a taxable possessory interest in the Improvements.

¶ 18    In its cross-appeal, the County challenges only the directed verdict ruling — it does not challenge the court's ruling, as the fact finder, that Sheltair held a taxable possessory interest in the Improvements.  Consequently, the only issue properly before us related to the nature of Sheltair's interest in the Improvements is the County's argument that the trial court should have granted its directed verdict motion by ruling that Sheltair owned the Improvements as a matter of law.  We address that argument next.

### B.    The County Was Not Entitled to a Directed Verdict

¶ 19    We review the denial of a directed verdict motion de novo. *State Farm Mut. Auto. Ins. Co. v. Goddard*, 2021 COA 15, ¶ 26.  We also interpret the lease de novo, seeking to give effect to the intent of the parties.  *See Dinnerware Plus Holdings, Inc. v. Silverthorne Factory Stores, LLC*, 128 P.3d 245, 246-47 (Colo. App. 2004).  We construe the document as a whole, giving meaning to every provision.  *See id.* at 247.

¶ 20    Directed verdicts are disfavored.  *Tisch v. Tisch*, 2019 COA 41, ¶ 50.  They should be entered only if the evidence, considered in the

light most favorable to the nonmoving party, establishes no grounds upon which reasonable people could find for the nonmoving party. *Id.* We affirm the denial of the directed verdict motion here because, based on the evidence, we cannot say that all reasonable people would have found that Sheltair owned the Improvements.

¶ 21 The lease does not definitively establish who owns the Improvements. The County correctly points out that the lease required Sheltair to construct the Improvements, required Sheltair to bear all costs associated with them, and allowed Sheltair to operate them exclusively for its own financial benefit. The County is also correct that it may elect to take title to the Improvements at the end of the lease, suggesting that Sheltair holds title during the lease term.

¶ 22 However, the lease does not explicitly provide that Sheltair holds title during the lease term. And other lease provisions suggest that Sheltair did not own the Improvements. As mentioned above, the lease says that the Improvements are permanently and inseparably attached to the leased property, suggesting that they become leased, not owned, by Sheltair — just like the land. Moreover, the parties do not dispute that Sheltair will receive no

compensation for the Improvements at the end of the lease term. The lease also gives the County some authority over how Sheltair can assign, sublease, and encumber the Improvements. We therefore conclude that the lease was ambiguous as to who owned the Improvements.

¶ 23 The County argues that we may consider extrinsic evidence to resolve this ambiguity in the lease and that extrinsic evidence showed that Sheltair owned the Improvements. *See E. Ridge of Fort Collins, LLC v. Larimer & Weld Irrigation Co.*, 109 P.3d 969, 974 (Colo. 2005) (courts may consider extrinsic evidence to resolve ambiguity in a written contract). But the extrinsic evidence identified by the County, viewed in the light most favorable to Sheltair, does not clearly establish Sheltair's ownership of the Improvements.

¶ 24 The County's extrinsic evidence consists of Sheltair's statements in other contracts and documents that it holds "indefeasible title" to the Improvements and that Sheltair depreciated the Improvements on its tax returns and financial statements. The County does not explain how or why Sheltair's representations in other contracts would determine its rights under

10

the lease. Indeed, it is possible that Sheltair misrepresented its interest in the Improvements in these other contracts and documents.

¶ 25     As for the depreciation evidence, federal tax law contemplates a lessee depreciating the cost of constructing improvements on leased land as a capital expenditure, regardless of whether the lessee owns the improvements. 26 C.F.R. §§ 1.162-11(b), 1.167(a)-4(a) (2025); *see Page v. Fernandina Harbor Joint Venture*, 608 So. 2d 520, 523 (Fla. Dist. Ct. App. 1992) ("[F]ederal tax laws allow a tenant to depreciate a tenant's costs associated with a leasehold interest, an intangible asset, which [sic] no requirement that the tenant 'own' the tangible property constructed by the tenant as improvements to that leasehold."). Thus, we cannot say that the lease, even when considered with the County's extrinsic evidence, establishes that Sheltair owns the Improvements.

¶ 26     The County's reliance on two cases, *Rare Air Ltd., LLC v. Property Tax Administrator*, 2019 COA 134, and *Southard v. Board of Equalization*, 996 P.2d 208 (Colo. App. 1999), does not persuade us otherwise. In both cases, a private party built improvements at

11

an airport on leased land owned by a tax-exempt government entity. *Rare Air*, ¶¶ 7-8; *Southard*, 996 P.2d at 209.

¶ 27    In *Rare Air*, the division held that the private party that built the improvements had a "taxable ownership interest" in them. *Rare Air*, ¶ 23. But the lease in *Rare Air* explicitly gave the private party that built the improvements title to those improvements during the term of the lease. *Id.* at ¶ 21. There is no such provision in Sheltair's lease.

¶ 28    We recognize that the *Rare Air* division went on to express, in dicta, its view about a hypothetical situation. The division said that even if the private party did not hold title to the improvements, "tax assessments on improvements are properly made even against mere lessees when the lessee is, for all practical purposes, the owner of the improvements." *Id.* at ¶ 22. But the County is not arguing that Sheltair is a lessee that, for all practical purposes, owns the Improvements and should therefore be taxed as the Improvements' owner. Instead, the County argues that Sheltair *actually owns* the Improvements. The *Rare Air* dicta does not support that proposition.

¶ 29    In *Southard,* the division held that the private party that constructed the improvements on leased land had an interest in the improvements that was "the substantial equivalent of complete ownership for general property tax purposes." *Southard,* 996 P.2d at 211. "Most important" to that conclusion was that the private party was "entitled to the cash market value of the improvements upon termination of the lease." *Id.* at 210-11. Sheltair had no such entitlement here.

¶ 30    In short, neither *Rare Air* nor *Southard* establishes that a lessee who does not have title to the improvements it builds on leased land and is not entitled to compensation for those improvements at the end of the lease nevertheless owns those improvements.

¶ 31    Because the evidence, considered in the light most favorable to Sheltair, did not compel the conclusion that Sheltair owned the Improvements, we conclude that the district court properly denied the County's directed verdict motion.

III.    Unit Assessment Rule: One Assessment or Two?

¶ 32    We next address Sheltair's argument that the district court erred by approving two separate assessments — one for Sheltair's

interest in the land and the other for its interest in the Improvements on that land. At the outset, we reiterate that this analysis is entirely separate from our review of the directed verdict denial. Here, unlike in our directed verdict analysis, there is no dispute that Sheltair's interest in both the land and Improvements was a possessory interest. That is, in response to Sheltair's argument that the unit assessment rule required a single assessment, the County does not challenge the district court's determination (explained above in Part II.A) that Sheltair had a possessory interest in both the land and the Improvements. Therefore, the propriety of that part of the district court's judgment is not properly before us. *See McLellan v. Weiss*, 2024 COA 114, ¶ 10 n.2 (declining to address argument raised below but not raised on appeal).

¶ 33 We review whether the unit assessment rule required a single assessment as a mixed question of fact and law. *See Rare Air*, ¶¶ 14-15. We review the district court's factual findings for clear error and review its legal conclusions de novo. *See id.* We conclude that the district court erred.

¶ 34    The unit assessment rule comes from section 39-1-106, C.R.S. 2025: "For purposes of property taxation, it shall make no difference that the use, possession, or ownership of any taxable property is qualified, limited, not the subject of alienation, or the subject of levy or distraint separately from the particular tax derivable therefrom."  Our supreme court has explained that this provision creates a unit assessment rule.  The rule deems an encumbrance on an owner's interest irrelevant for property tax purposes.  *City & County of Denver v. Bd. of Assessment Appeals*, 848 P.2d 355, 359 (Colo. 1993).  In other words, an assessor must issue a single assessment for the entire value of a taxable property to that property's owner without separating out the value of lesser interests in that property, such as leaseholds.  *Vail Assocs.*, 19 P.3d at 1278.  After the tax is assessed to the owner based on the value of the "land and improvements together," the owner can pass on the burden of that tax to holders of lesser interests in the property.  *Id.*

¶ 35    But what happens when, as here, the property owner is tax-exempt, and a private party holds a possessory interest in the property?  Our supreme court has been clear: "When the fee owner is tax exempt, . . . the unit assessment rule . . . logically results in

15

the assessment of the private possessory interest in both the government lands and improvements thereon, resulting ultimately in one tax assessment covering both." *Id.* at 1279 n.20.

¶ 36     Sheltair had a possessory interest in both the land and Improvements. *Vail Associates* required those two interests to be taxed together in a single assessment.

¶ 37     Neither *Rare Air* nor *Southard* suggests otherwise. The *Rare Air* division upheld separate assessments for land and improvements because the private-party interest in each was different — the division held that there was private *ownership* of the improvements but only a *possessory interest* in the land. *Rare Air*, ¶¶ 32-35.[2]  Again, Sheltair held a possessory interest in both the land and Improvements that must be taxed as one under *Vail Associates*.

¶ 38     The *Southard* division held that an improvement-only assessment was proper because the possessory interest in the land was not taxable at all; it was exempt. *Southard*, 996 P.2d at 210.

---

[2] *Rare Air* is further distinguishable because one private party was deemed to own the improvements and *a different* private party held a possessory interest in the land. *Rare Air Ltd., LLC v. Prop. Tax Adm'r*, 2019 COA 134, ¶¶ 4-7, 32-35.

But after *Southard, Vail Associates* partially invalidated that exemption, 19 P.3d at 1280, and the legislature fully repealed it in 2002, Ch. 268, sec. 6, § 39-3-136, 2002 Colo. Sess. Laws 1009.

¶ 39     We therefore conclude that the district court erred by concluding that the two separate assessments were proper. Because Sheltair has established that the assessments were incorrect, it is entitled to a remand for a new single assessment that values its possessory interest in both the land and Improvements together in accordance with section 39-1-103(17)(a), C.R.S. 2025 (setting out methodology for valuing possessory interests in tax-exempt property).

¶ 40     We are aware that the district court suggested during the bench trial that it might not matter whether the County issued one assessment or two if each approach would have resulted in the same aggregate tax liability. But issuing two assessments violated the unit assessment rule. And employing incorrect methodology to arrive at an assessment renders the assessment incorrect and entitles the taxpayer to a new assessment that complies with the law. *See Bd. of Assessment Appeals v. Sampson*, 105 P.3d 198, 207-08 (Colo. 2005) (holding that a taxpayer must demonstrate only

that an assessment is the product of noncompliance with the applicable law to obtain relief; a taxpayer need not provide an alternative valuation); *see also Vail Assocs.*, 19 P.3d at 1276 (explaining that the Colorado Constitution requires that all possessory interests must be taxed uniformly). This is true regardless of how accurate the ultimate tax liability based on the incorrect assessment might be. *See Sampson,* 105 P.3d at 207-08; *see also Vail Assocs.,* 19 P.3d at 1276.

## IV. Disposition

¶ 41    The district court's denying the motion for directed verdict is affirmed, its judgment upholding the two assessments is reversed, and the case is remanded to the district court with directions to order a new assessment consistent with this opinion.

JUDGE JOHNSON and JUDGE GOMEZ concur.